[No. 11674.   In Bank. — December 2, 1889.]

## HUMBOLDT SAVINGS AND LOAN SOCIETY, RESPONDENT, *v.* C. WENNERHOLD ET AL., APPELLANTS.

CORPORATION — SAVINGS BANK — BY-LAWS — BOND OF SECRETARY. — The by-laws which define the duties of the secretary of a savings bank enter into and form part of the contract of the sureties upon the bond of the secretary, which is conditioned that he shall faithfully perform the duties of his office so long as he shall be continued in said office, and do all things required of him by the by-laws of the corporation.

ID. — CONSTRUCTION OF BY-LAWS — DUTY OF SECRETARY — LIABILITY OF SURETIES. — When the by-laws of a savings bank provide that the secretary shall collect moneys due to the society, and keep on hand all the moneys, securities, or properties received by him on account of the society until the same are disposed of under the direction of its board of directors, and that he shall not use, loan, or otherwise dispose of any funds of the society, the liability of the sureties on his bond is not confined to the misappropriation of moneys collected by him from loans, interest, assessments, or rents due to the society, but extends to the misappropriation by him of moneys paid into the bank by depositors. (WORKS, J., and BEATTY, C. J., dissenting.)

ID. — TERM OF SECRETARY — DURATION OF BOND. — When the bond of the secretary of a savings bank is expressly conditioned that he shall faithfully perform the duties of his office so long as he shall continue in office as secretary, the fact that he was appointed by a board of directors which was elected for only one year will not limit the liability of the sureties to that year, but it will continue throughout the term of his actual holding, if his appointment is general and unlimited, and no duration of his term is fixed by statute or by the by-laws of the corporation.

ID. — MISAPPROPRIATION OF SPECIAL DEPOSITS — LIABILITY OF SURETIES. — The sureties upon the bond of the secretary of a savings bank are not liable for the misappropriation by him of moneys belonging to borrowers from the bank, which have been secured by note and mortgage to the bank, and placed upon special deposit in bags marked with the borrowers' names, and subject to their call.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion of the court.

*Manuel Eyre,* and *Frank, Eisner & Platshek,* for Appellants.

*A. H. Loughborough,* for Respondent.

THORNTON, J.—In April, 1870, one Adolph Hartmann was appointed secretary of the plaintiff, an incorporated savings bank. This corporation was formed for the purpose of aggregating the funds and savings of the members thereof and others, and the preservation and safe investment of 'the same for the common benefit of all. It received money on deposit, and lent such money at interest.

Hartmann's appointment was made by the board of directors by virtue of the by-laws of the corporation.

The duties of the secretary were prescribed by the by-laws. These duties were as follows:—

"The secretary shall keep, or cause to be kept, such books as the business of the society shall require, subject to the approval of the board of directors. He shall attend all the meetings of the society and of the board of directors; shall serve, or cause to be served, all notices of meetings, and keep accurate record thereof. He shall further collect all moneys due to the society, and shall keep the same in the mode prescribed by the board of directors."

Although under the by-laws the board of directors was empowered to prescribe the term of office of the secretary, no term was ever fixed.

Hartmann held the position of secretary from his appointment above mentioned until September 18, 1883, when he was dismissed.

During this period, from April, 1870, until September 18, 1883, Hartmann received and paid out the money of the bank.

There was no one acting as teller by that name, and no one acting as cashier by the name of cashier.

On the second day of January, 1880, Hartmann was required by the board of directors to give a bond for the faithful performance of his duties as secretary in the sum of five thousand dollars, with sureties, and on the same

day he executed such bond with the defendants and others as sureties.

The condition of this bond, with a preliminary recital, was as follows: " Whereas, the above-named Adolph Hartmann has been chosen and appointed secretary of said corporation, and whereas, he may hereafter, from time to time, be re-elected, rechosen, and reappointed or continued in said office, or suffered to hold the same, — now, the condition of this obligation is such that if the said Adolph Hartmann shall, during said term and during all the time he shall hold said office, well and truly serve the said corporation as such secretary so long as he shall continue and be continued in said office, and well, truly, and honestly perform and discharge all his said duties as such officer, and do all things required of him by the by-laws of said corporation which may be now in force, or which may be hereafter enacted by said corporation, and shall well and truly and faithfully perform all the duties which shall be required of him, and obey all orders and directions given him by the board of directors of said corporation, then this obligation to be void; otherwise, to be and remain in full force and effect."

This action was brought against some of the sureties to the above-mentioned bond for alleged defalcations by Hartmann committed while he acted as secretary of the plaintiff.

The defalcations appear to be as follows:—

1. While acting in the employ of plaintiff, he, Hartmann, received in the plaintiff's bank certain sums of money from depositors, who came to deposit money in the bank, entered the sums so received in the pass-books of the depositors, but did not enter them in the books of the bank. These sums amounted to $3,695.

2. Certain persons deposited money, filling out the deposit tags; Hartmann received the money, signed or indorsed the tags with his name as secretary, and re-

turned them to the depositors as their vouchers, but failed to enter the amounts in the books of the bank. These sums amount to $5,344.50.

3. Hartmann took from bags deposited in the vault and safe of the plaintiff's bank money set apart for persons who had borrowed the same from the bank, amounting to three thousand eight hundred dollars.

4. He took from the bank certain sums, filing a check or receipt to which he forged the name of V. Chapman, so that it appeared that the money had been paid by him to Chapman, whereas he had paid her nothing, in sums amounting to $5,245.36.

All of the foregoing amounts of money were, during the period above mentioned, taken by Hartmann and converted to his own use.

It is argued that the defendants only agreed to become responsible for money received by Hartmann as secretary; that as secretary he was " to collect all moneys due to the society," and " to keep the same in the mode provided by the board of directors "; that the moneys due to the society he was as secretary to collect consisted of interest on loans due to the corporation, amounts due on a levied assessment, rents of their building, and the principal of a loan, when repaid.

It is clear that none of the moneys converted by Hartmann came within either of the classes just named; and if the obligation of the defendants extended no further than to such moneys, the defendants cannot be charged in this action.

But the by-laws, in defining the duties of the secretary, provided that he should keep on hand all the moneys, securities, or properties received by him on account of the society until the same be disposed of under the direction of the board of directors, and that he shall not use, loan, exchange, or otherwise dispose of any funds of the society.   Of these provisions of the by-laws, which were in existence when the society received the

bond, it must be held that the defendants were aware. These provisions of the by-laws went into the contract of the sureties, and constituted a part of it.   They must be considered as having been inserted in the bond.

The Civil Code provides that "in interpreting the terms of a contract of suretyship, the same rules are to be observed as in the case of other contracts." (Civ. Code, sec. 2837.)

The rules for the interpretation of contracts will be found in the Civil Code, sections 1636 to 1661, both inclusive.

"A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (Civ. Code, sec. 1636.)

"The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, sec. 1641.)

It should be remarked, however, that all the foregoing sections, including section 2837, must be read in connection with section 2836 of the Civil Code, which provides that "a surety cannot be held beyond the express terms of his contract." So far as the words of this latter section limit and control the other sections referred to, they must be regarded.

This court, in speaking of bonds like the one under consideration, said of the matters to which they relate, that they are subjects of private contract, in regard to which the parties may bind themselves in any manner or to any extent not violative of public policy or positive statute. (*Hubert* v. *Mendheim*, 64 Cal. 226; *Fresno Canal Co.* v. *Allen*, 67 Cal. 508.)

We cannot see why the sureties here have not bound themselves by that portion of the provisions of the by-laws above set forth as constituting a part of their bond. The obligation is not limited to the moneys due to

the society which the secretary was to collect and keep, but extends, also, to other moneys of the society received by him which he is to keep on hand, and which he is not to use, loan, exchange, or otherwise dispose of.

For these duties of the secretary, common prudence, and that knowledge of the law which we must presume the defendants had when they executed the bond, prompted and counseled them to look to the by-laws of the society, and if they had examined them they would have ascertained that these duties were prescribed as stated above, and they would have then found that the duties which are prescribed in the by-laws to be discharged by the secretary are not merely clerical, nor are they limited, as contended by counsel for appellants here, to the moneys due to the society, which he is to collect and keep in the mode prescribed by the board of directors.

Having regard to the rules above referred to, provided by the Civil Code for the interpretation of contracts, we cannot, in ascertaining what is the true meaning of the contract of the defendants, confine the examination to the recital which precedes the condition, but the whole must be taken together, inasmuch as "the whole of a contract is to be taken together so as to give effect to every part, if reasonably practicable." (Civ. Code, sec. 1641, *supra.*)  We should be disregarding this rule, solemnly enacted for our guidance, as well as the dictates of a sober judgment, did we confine our consideration in ascertaining what the parties meant by the words employed in their contract to express their intent to the recital, as regards the duties of secretary above referred to.

It is argued that as the board of directors was elected for only one year, their appointment of Hartmann as secretary existed during the year for which they were chosen, and as the defalcations, except to the amount of six hundred dollars, occurred subsequent to that year,

that the defendants cannot be held responsible for them.

We do not think that such contention is maintainable. It is contrary to several well-considered cases, to which we refer. (*Louisiana State Bank* v. *Ledoux,* 3 La. Ann. 674; *Anderson* v. *Longdon,* 1 Wheat. 91; *Union Bank* v. *Ridgely,* 1 Har. & G. 432; *Dedham Bank* v. *Chickering,* 3 Pick. 340.) In the foregoing cases the point was distinctly made, argued, and determined. In the case first cited, one Duplessis had been appointed note clerk in the Louisiana State Bank. He was appointed to continue in office during the will of the present or any future board of directors of the bank. It was so recited in the bond. The court there said: "The argument presented is mainly deduced from the provisions of the charter with regard to the election of directors. It provides that the directors of the bank shall be annually elected, and forbids the re-election of more than two thirds of the directors in office at the time of each annual election, permitting no director to hold his office more than three years out of five in succession. But it does not follow from this legislation with regard to the board of directors that the mere clerks and servants of the corporation should hold their appointments by the same tenure. If these clerks and servants were to be considered the mere clerks and servants of the directors who appoint them, the conclusion might be a reasonable one. But we do not so regard them. They are the clerks and servants of the corporation; and the limited term of service of the directors does not control the duration of such appointments. It is proper to add that there is nothing in the by-laws of the bank limiting the duration of the place of note clerk, and his appointment itself was general."

In the case of *Anderson* v. *Longdon, supra,* where a similar point was presented, Chief Justice Marshall pointed out the difference in a sheriff's bond, given

under the statute of Virginia: "The case of the sheriff's bond," said the chief justice, "is very different. The commission of the sheriffs in ·Virginia is annual; of course his sureties are bound for one year only. It is true, the directors of the company are elected annually, but the company has not said that the agent shall be for one year· only; his appointment is during pleasure. The sureties do not become sureties in consequence of their confidence in the directors, but of their confidence in the agent whose sureties they are."

The question was also discussed in *Union Bank* v. *Ridgely, supra.* This decision will be found in 1 Har. & G. 432.

The office of secretary of the plaintiff was not an annual office. It does not appear that the charter or constating papers of the corporation made such office an annual one. Nor is there any by-law or regulation of the society which made such office annual. Though a power was given to the board of directors to fix the term of office of the secretary, it appears that it was never done. The board might have fixed it at one or two or three years. They never did define such term. Of this the defendants were informed by the language of the bond. The bond set forth that whereas Hartmann has been chosen and appointed secretary, and whereas he may hereafter, from time to time, be reelected, rechosen, and reappointed or continued in said office to hold the same, now, if said Hartmann shall, during said term, and during all the time he shall hold said office, well and truly serve the said corporation as secretary so long as he shall continue and be continued in said office, well and truly, etc. ·

The board of directors had power invested in them under the by-laws to dismiss the secretary summarily, and it might have made the appointment of secretary for an indefinite period, subject always to the power of the board to dismiss him summarily.

We can see no reason why the defendants could not contract to be responsible for the conduct of Hartmann so long as he should continue in the office of secretary. This we think they clearly did do. There was no law in existence when they executed the bond which prohibited them from so contracting.

On this point, *Hughes* v. *Miller,* 5 Johns. 167, is in point, and, as was observed of it in *Hubert* v. *Mendheim,* 64 Cal. 223, " is worthy of much consideration, because it has the sanction of the honored name of Chief Justice Kent.    There the bond on which the action was brought was given to the sheriff by a deputy, conditioned for the due execution of the office of deputy sheriff *during his continuance* in such office.    The sheriff took on himself the office in September, 1801, pursuant to an appointment in August, and was reappointed March, 1803. The defendants, who were sureties on the bond, pleaded that the sheriff had sustained no damages in consequence of any act of the deputy previous to his taking on himself the office under his reappointment in 1803.    It was held that the plea set up no defense to the action."

"The bond," said the court," " was that Smith should execute well the office of under-sheriff during his continuance in such office, and he was equally in that office after as before the reappointment of the plaintiff.    There was no interval between the one appointment and the other in which the plaintiff was not sheriff, and it was not necessary to reappoint Smith in order to constitute him under-sheriff."    (5 Johns. 172.)

We are of opinion that by the terms of the bond the defendants made themselves responsible for the defaults of Hartmann so long as he continued to be secretary.

It is contended that the sixteenth finding is not sustained by the evidence as to the sum of three thousand eight hundred dollars, which, it is found, was taken from the safe of plaintiff while the same was in his custody as secretary of said corporation.

The defendants were not responsible for any moneys converted by Hartmann which were not the funds of the society. The defendants as sureties "cannot be held bound beyond the express terms of this contract." (Civ. Code, sec. 2836.) The terms of their contract do not include any moneys not belonging to the society, and the evidence on this point does not show that these moneys were the moneys of the society. The question of the ownership of these sums is left in doubt by the evidence, and under such circumstances we cannot hold that they were such moneys as the defendants as sureties are chargeable with under their contract.

This sum of three thousand eight hundred dollars was made up of sums of money lent, of which two thousand dollars was lent to I. H. Bostwick, one thousand dollars to C. Jones, and eight hundred dollars to H. Nieman.

The entire testimony as to these losses comes from the president of the society, and is as follows: "During the time that Hartmann was secretary, the custom in making 'building loans,' so called, was, when a loan was granted, one or more payments were made on account, on the architect's certificate; then when we entered the amount of the loan in the ledger we set aside the balance. We took the note and mortgage from the borrower in the first instance; we made these advances, and then at a certain period we charged up the whole loan, and put the balance of the whole loan, less the advances made, in a bag, and put it in the safe with a tag showing the borrower's name; from that time he paid interest on it, and no further entries were made on the books. When any money was taken from the bags, a memorandum would be made on the tag attached to the bag.

"The witness testified to the absence of the amounts already set out herein from the bags of Bostwick, Jones, and Nieman, discovered after Hartmann's death; that

nobody except himself and Hartmann had access to those bags, and that he did not take any of the money. The money has since been made good by the bank.

"Afterward, in answer to the court, the witness gave an instance of money deposited in a bag in the safe, thus: June 5th, Nieman gave his note and mortgage for seven thousand five hundred dollars; July 7th, he was given five hundred dollars; again in July, fifteen hundred dollars; and July 21st, fifteen hundred dollars, — of which no entries were made; but on that day the balance of four thousand dollars was placed in a bag with a tag on it giving Nieman's name and the amount in the bag, and then an entry was made and interest charged to him. The architect's certificate and Nieman's money-order were our vouchers, which we filed with his note, but no entry was made in the books until the balance was placed in the bag, and then the whole was charged.

"*The Court.*—Then it appeared on the books that he had received his money, — as if had received seven thousand five hundred dollars, and taken it away with him?

"Yes, sir; set it aside.

"*The Court.*—The fact that he left this money with you, in your safe, in a bag, special deposit, would not be entered on the books at all?"

It seems to us that it might well be held that the money placed in the bags belonged to the borrowers, and not to the society. It would be strange that the borrower should be paying interest to the society on money which he had borrowed, and the payment of which he had secured by note and mortgage, if it was not his own money. Further, no entries of such moneys in bags was made at all in the books of the bank. If the money was left as a special deposit, it seems to have been left as the money of the borrower, and no entry was allowed to be made of it as a special deposit by any one in the bank's books. The course of dealing with this money,

as above stated, we infer from the testimony, was the course approved by the directors of the bank.

If the bank became the custodian of specific sums of money in bags which were the moneys of other persons, we are of opinion that the defendants, as sureties, cannot, under the terms of this bond, be held responsible for them.

We find no evidence of such negligence on the part of directors of the bank as to release the defendants from liability on the bond in suit.

We find no other error in the record than the one above pointed out, as to the sum of three thousand eight hundred dollars, but for such error the judgment must be reversed, and the cause remanded for a new trial.

So ordered.

SHARPSTEIN, J., McFARLAND, J., FOX, J., and PATERSON, J., concurred.

WORKS, J., dissenting.—I dissent.

In my opinion the judgment should have been for the defendants. None of the moneys received and misappropriated by Hartmann were received by him as secretary, nor were they in any way covered by the terms of the bond of the defendants. To hold them liable for any part of these moneys is to render the defendants liable beyond the plain terms of their contract.

BEATTY, C. J.—I concur in the above.

Rehearing denied.