[No. 13185.    Department Two.—March 1, 1890.]

R. E. WILHOIT ET AL., EXECUTORS, ETC., APPELLANTS, *v.* SILAS TUBBS, RESPONDENT.

SWAMP AND OVERFLOWED LANDS—TITLE OF STATE—JURISDICTION OF FEDERAL LAND DEPARTMENT.—Under the swamp-land act of Congress of September 28, 1850, and the act of July 23, 1866, to quiet land titles in California, the plat of the survey of the township approved by the United States surveyor-general of California showing any subdivision of land in said township to be swamp and overflowed is conclusive between ·the state and the United States, and vested the title thereto in the state as of the twenty-eighth day of September, 1850, and the federal land department had no jurisdiction thereafter to order a hearing as to the character of said land, or to determine that the same was not swamp and overflowed, or to make alterations in the approved plat of survey, or to issue a patent for any portion of the land shown by the original approved plat to be swamp and overflowed.

ID.—PRESCRIPTIVE TITLE TO PATENTED LANDS—STATUTE OF LIMITATIONS.—Neither section 315 nor section 316 of the Code of Civil Procedure, limiting the right of the state and its grantees to the period of ten years' limitation against the state, has any application to a case where a state patent is issued, when not more than five years of the ten-year limit against the state has run. In such case the five-year limit prescribed by the various sections of the code respecting the adverse occupancy of lands between private individuals applies, and begins to run from the date of the patent in favor of an adverse occupant then in possession of the lands.

APPEAL from a judgment of the Superior Court of San Joaquin County.

The facts are stated in the opinion.

*J. B. Hall*, and *J. M. Kile*, for Appellants.

*Joseph H. Budd*, for Respondent.

GIBSON, C. — This was an action of ejectment brought by the executors of Joseph Kile, deceased, to recover the possession and the rents, issues, and profit of two parcels of land in the county of San Joaquin, being the south half of the southwest quarter of section 11, in township 4 north, of range 5 east, Mount Diablo meridian, containing eighty acres, and a portion of the south half of the southeast quarter of the same section, containing five acres, together with damages for the withholding thereof.

Plea, general denial, and affirmative defenses of adverse possession with and without color of title, and a former adjudication as to the five-acre tract. Judgment for defendant, from which plaintiffs appeal upon the judgment roll, which contains a bill of exceptions.

The township lines, including the land in controversy, were surveyed and established under the authority of the United States in June, 1853; and by the same authority the subdivisional survey of the township was made in April, 1864. The field and descriptive notes, together with a plat of said survey, were approved and certified by the United States surveyor-general for the state of California on June 30, 1864.

The township plat was prepared in triplicate; one of which, together with a transcript of the field and descriptive notes, properly certified, was forwarded by the surveyor-general to the general land-office of the United States; one was retained in the office of the surveyor-general; and the other was filed in the United States district land-office at Stockton July 1, 1864, which was then the proper office.

Upon the approved plat the greater part of the land of township 4, including all of section 11, was colored

green, and upon the face of this portion the words "swamp and overflowed lands" were written, and the lands so designated were excluded from the estimated aggregate area of "public lands" and included within that of "swamp and overflowed lands," as shown by the marginal table of acres forming a part of said plat.

In June, 1865, the plat which was on file in the Stockton land-office was withdrawn therefrom by the surveyor-general, in compliance with an order of the commissioner of the general land-office.

Thereafter, on February 20, 1868, a true copy of the plat then on file in the general land-office, together with a marginal table of areas and certificate of approval thereon, as above mentioned, was made and certified to as a correct copy by the commissioner, and was also certified to by the surveyor-general, and in the same month filed in the United States land-office at Sacramento, within the Sacramento land district, to which the township in question had been transferred.

The copy was the same in all respects as the plat which was withdrawn from the land-office at Stockton, except as to the certificate of the commissioner.

In September, 1860, one John Thompson purchased from the state, as swamp and overflowed lands, the southwest quarter of section 11, and in the month of November following paid the state in full therefor, and received from the register of the state land-office a certificate of purchase.

The subdivisional survey, made for the purpose of segregating the land so purchased by Thompson, was made by the county surveyor of San Joaquin County, whose plat and field-notes of such survey were approved, and first recorded by him in his office, and were then approved by the surveyor-general of the state, who transmitted a copy of such approved plat and field-notes to the register of the state land-office.

Thompson afterward assigned his certificate of pur-

chase to Joseph Kile and R. B. Thompson, who, upon the presentation and surrender thereof, received from the state a patent for the land described in the certificate.

On September 21, 1863, R. B. Thompson, for a valuable consideration, conveyed all his interest in the land described in the patent to Joseph Kile.

Joseph Kile, in August, 1864, made an application to purchase, and on December 30th of the same year did purchase, from the state, as swamp and overflowed land, the southeast quarter of section 11, and on August 5, 1865, received a patent from the state for the same. The subdivisional survey of the land so purchased was made and recorded in the same way as that in the case of John Thompson.

The surveyor-general, in May and June, 1867, and in May, 1870, by notices in writing, notified the United States general land-office that the state claimed the land in controversy under the act of Congress of July 23, 1866, above referred to, as the state had selected and sold the same as swamp-land to *bona fide* purchasers prior to the passage of said act.

In January, 1862, the defendant, Tubbs, then being possessed of all the qualifications requisite to enable him to acquire title to land as a pre-emptor, made an actual settlement upon the south half of the southwest quarter of section 11. He erected a dwelling-house thereon, in which he and his family resided, and he in person, with his family, have ever since occupied and cultivated the land. On July 10, 1862, his declaration of intention to pre-empt the same was received and filed by the register of the United States land-office. At the time of defendant's entry and declaration of intention to purchase, as stated, he had knowledge of the prior state survey and sale of the southwest quarter by the state to John Thompson as swamp and overflowed land. On May 7, 1873, the defendant made final proof of his

pre-emption entry for the south half of southwest quarter of section 11.

May 8, 1873, the defendant made an original homestead entry, under the laws of the United States, of the south half of the southeast quarter of section 11, and on November 18th of the same year he commuted the same to a cash entry, and on the 1st of October, 1879, received a patent for each tract from the United States.

No other homestead or pre-emption entries or settlement of, for, or upon the lands in controversy, excepting the entries and settlement of the defendant, were ever made.

Except as to defendant's claim of title by prescription, an identical state of facts, as far as the five acres in controversy here are concerned, appeared in the case of *Tubbs* v. *Wilhoit*, 73 Cal. 61; and as to the eighty-acre tract involved here, the facts are very similar to those of that case, except as to the claim of title by prescription. That was an action of ejectment in which the plaintiff relied upon a patent of the United States, issued upon a commuted homestead entry made on May 8, 1873, on which date whatever right the plaintiff thereby acquired attached; and in support of his patent he claimed that the land described in his patent was, on September 28, 1850, the date of the swamp-land act, dry land. The defendants, who were the executors of one Joseph Kile, relied upon a patent for the same tract as swamp and overflowed land, issued to their testator by the state of California on the fifth day of August, 1865, upon an application to purchase the same, made to the proper state authorities, in August, 1864, and claimed in support of such patent that the tract was swamp and overflowed land on the date of the swamp-land act, and had been conclusively established to be such before the plaintiff had acquired any right to the land. This court, following the case of *Wright* v. *Roseberry*, 121 U. S. 488, held that, under the acts of Congress of September 28, 1850,—known as the

swamp-land act,—and of July 23, 1866, entitled "An act to quiet land titles in California," "the plat of the survey of the township, including the lot in controversy, approved by the United States surveyor-general for California, was conclusive between the state and the United States, and vested the title in the state of California as of the 20th of September, 1850, the date of the passage of the said swamp-land act."

It further appears from the findings in this case, as it did in *Tubbs* v. *Wilhoit*, 73 Cal. 61, that in 1874 a hearing was ordered by the commissioner of the general land-office as to whether the land in controversy was dry or swamp and overflowed, which hearing resulted in a determination to the effect that it was public and not swamp and overflowed land. " But," as was said in the case last referred to, "the order for a hearing was made after the title had vested in the state, and therefore the decision of the federal land department that the land was not swamp and overflowed was of no validity whatever."

The alterations made in December, 1870, upon the plat of the survey of said township 4, in changing the segregation line between the swamp and public lands, as shown on the plat on file in the office of the United States surveyor-general, so as to make it appear therefrom that the south half of the south half of section 11 was public and not swamp and overflowed land, and also the same alterations made upon the plat of the same township in the office of the register of the Stockton land district, all of which were made pursuant to instructions received from the United States general land-office, as shown by another finding in this case, were of no effect for the reason last quoted.

It is therefore clear that, as the title to all the land involved here had passed from the United States to the state of California as early as September 28, 1850, the date of the swamp-land act, the several patents subsequently issued by the United States to Tubbs, the

respondent here, upon his pre-emption and commuted homestead entries, did not convey anything, as there was nothing for them to operate upon.

But the court also found, upon the issue tendered by the respondent by his plea of adverse possession and the statute of limitations, that he, the defendant, Tubbs, had, ever since his entry upon the land, on or about January 1, 1862, been in the open, notorious, and exclusive possession and occupation of the south half of the southwest quarter of section 11, containing eighty acres, claiming the same adversely to Kile, his predecessors in interest, and all others; and ever since October, 1879, such adverse possession has been continuous, and he has based it upon a claim of title, exclusive of other right, upon the patent to the land issued to him by the United States; and he has, since the date first mentioned, paid all taxes levied or assessed upon the above-described land; and was, on the 23d of May, 1884, the time of the death of Kile, and ever since has been, the owner of the land by a title by prescription, and entitled to the possession and rents, issues, and profits of the land. And as to the five acres, which consist of a portion of the south half of the southeast quarter of section 11, the court found that he, defendant Tubbs, has been in the open, notorious, continuous, and exclusive possession and occupation thereof since May 8, 1873, claiming the same adversely to Kile, his predecessors in interest, and all others; and has, ever since October, 1879, maintained such adverse possession upon a claim of title, exclusive of other right, based upon the patent issued to him by the United States; and since May, 1873, he has paid all taxes levied or assessed on the south half of the southwest quarter of section 11; and was, on May 23, 1884, the date of the death of Kile, and ever since has been, the owner of the said five acres by a title by prescription, and entitled to the rents, issues, and profits of the said five acres. Another finding is, that Joseph Kile died on May 23, 1884, and was not on

the day, before, nor at any time thereafter, the owner of either tract of land in controversy, or entitled to the rents, issues, and profits thereof; nor since his death have the plaintiffs, as his executors, been entitled to the possession of said land, or the rents, issues, and profits thereof.

Now, as to the title by prescription, the appellants contend that it cannot prevail, because their testator claimed both tracts in dispute by title derived from the state through the patents issued therefor, as swamp and overflowed lands; and as respondent claimed adversely to him, and his predecessors in interest, including the state, to avail himself of a plea in bar against the state and her successors in interest, he should have pleaded section 315 of the Code of Civil Procedure, or the similar provision of the statute of limitations of 1850, chapter 2, section 3, as they were and are the only laws under which the defendant could acquire a prescriptive title.

It may be conceded that if section 315, *supra*, is the only limitation that applies in this case, as the defendant failed to plead it, or the facts necessary to bring himself within its terms, he cannot derive any benefit from it. We are of the opinion, however, that neither section 315 nor .section 316 of the Code of Civil Procedure, also relied upon by appellant, apply in this case. Hence the case of *Genesee Valley C. R. Co.* v. *Slaight*, 49 Hun, 35, cited by appellants, in which similar provisions of the laws of New York were applied, is not in point.

It is quite clear that a state as a sovereign is not precluded from exercising the prerogative of such with regard to her property, except in so far as she has expressly restricted herself in her legislative enactments. Such a restriction is found in section 315, *supra*, which reads as follows: "The people of this state will not sue any person for or in respect to any real property, or the issues or profits thereof, by reason of the right or title of the people to the same, unless,—1. Such right or title shall have accrued within ten years before any action or other

proceeding for the same is commenced; or 2. The people, or those from whom they claim, shall have received the rents and profits of such real property, or of some part thereof, within the space of ten years." (See *People* v. *Center*, 66 Cal. 551, and *People* v. *Clark*, 9 N. Y. 349, therein cited; also *Weber* v. *Harbor Comm'rs*, 18 Wall. 57, in which the same provision of the statute of limitations of 1850 of this state is commented upon.)

Section 316 of the Code of Civil Procedure, next referred to, is also the same as section 4, chapter 2, of the statute of limitation, of 1850, except the word "shall," in section 4 of the latter statute, has been changed to the word "can," in section 316.

By the terms of section 316, patentees or grantees of the state are precluded from maintaining an action respecting the real property granted, unless the same might have been maintained by the people as specified in section 315, in case the patent had not been issued or the grant made; or in other words, if the right of the people to maintain such an action is barred at the time the patent is issued or the grant made, the right of the patentee or grantee is also barred. If, however, when the state patent is issued or its grant made, not more than five years of the ten-year limit prescribed in section 315 has run, the patentee or grantee can maintain an action to recover the property or the mesne profits thereof at any time within the period of five years, as provided in sections 318, 319, and 321, and subdivision 2 of section 336, of the Code of Civil Procedure. All of these sections, together with sections 323, 324, and 325 of the same code, defining the different kinds of adverse possession, were set up by defendant in his answer, in bar of appellants' right to maintain this action for the recovery of the premises involved, or the mesne profits thereof.

We apprehend that the distinction between sections 315 and 316 and the other sections mentioned is, that as the state cannot be disseised of its lands by the adverse

occupancy of another (Civ. Code, sec. 1006), a mere assertion by it of ownership by legislative enactment or otherwise, as well as by a judicial proceeding, as indicated in *Weber* v. *Harbor Commissioners*, 18 Wall. 57, will prevent the time specified in section 315 from running and ripening into a presumptive title in favor of the adverse occupant; while under the other sections, between individuals, nothing short of an actual re-entry upon or the commencement of an action to recover the possession of the property of which he has been disseised under an adverse claim will avail the true owner in preventing the adverse occupant from acquiring a title by prescription, except an acknowledgment of the true title by the adverse occupant.

As the title of the United States to the swamp-lands within this state, of which the land involved here was a part, passed to this state on the passage and by virtue of the act of Congress of September 28, 1850, it follows that when the state subsequently sold the several tracts in dispute, one, the eighty-acre tract, to the predecessors of Kile, and the other, embracing the five acres, to Kile himself, upon their several applications made to purchase the same as swamp-land, under the act of April 21, 1858, and the amendments thereto of April 18, 1859, and afterward issued its patents for such tracts on the 26th of June, 1862, and the fifth day of August, 1865, respectively, the state parted with all its title to the several tracts so patented. And the statute of limitations commenced to run on those dates, respectively, in favor of the defendant, against all persons claiming title under such patents. (*O'Connor* v. *Fogle*, 63 Cal. 9; *Reed* v. *Ybarra*, 50 Cal. 465; *Riverside L. & I. Co.* v. *Jansen*, 66 Cal. 300; *Henshaw* v. *Bissell*, 18 Wall. 255.)

This action was not commenced until the fourteenth day of December, 1887, and the respondent, having maintained his adverse possession from the 26th of June, 1862, the time when the state's patent to the eighty-acre

tract was issued, until the twenty-third day of May, 1884, the date of the death of Kile, a period of nearly twenty-two years, and thence to the commencement of this action, and paid all the taxes levied or assessed thereon, had, nearly seventeen years before the last-mentioned date, acquired a prescriptive title to the tract, which extinguished the legal title Kile had acquired from the state. (Civ. Code, sec. 1007.) So, too, as to the five-acre tract. The respondent initiated his adverse possession of and claim of title to it on the 8th of May, 1873, the date of his homestead entry, and maintained the same, and paid all taxes levied or assessed upon the land, up to the commencement of this action, and thereby acquired a prescriptive title to it sufficient against Kile six years before the latter's death.

There is a finding to the effect that in a certain action, in which the appellant's testator, Kile, and one Reese B. Thompson were plaintiffs, and the respondent here was defendant, involving the title to the five-acre tract in question here, judgment was rendered in favor of the defendant on April 25, 1866, and was subsequently, on appeal therefrom to this court, affirmed, and that the same still remains in force. But the conclusion we have reached regarding the prescriptive title acquired by the respondent to the same land renders it unnecessary to consider its effect.

The record does not disclose any error, and we therefore advise that the judgment be affirmed.

BELCHER, C. C., and VANCLIEF, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment appealed from is affirmed.

Hearing in Bank denied.