[L. A. No. 2240. In Bank.—December 1, 1910.]

## J. H. SMITH, Appellant, v. CITY OF LOS ANGELES, and GRIFFITH J. GRIFFITH, Respondents.

TAXATION — DESCRIPTION BY CONGRESSIONAL SECTIONS — ABSENCE OF SURVEY.—Under section 3650 of the Political Code, the descriptions in assessments of land included within the exterior limits of a Mexican grant containing upwards of six thousand acres, which, after giving the name of the ranch, merely describes the property assessed as "being fractional section 24, T. 1 N. R. 14 W.," and "fractional section 25, T. 1 N. R. 14 W.," are insufficient to identify the property assessed when no survey of the land into congressional sections had ever been made.

ID.—MAP ATTACHED TO PATENT—INSUFFICIENT IDENTIFICATION OF SECTIONS.—A map and profile of the Mexican grant attached to the United States patent therefor, on which the only lines of survey marked thereon were the base line, a line marking the southerly boundary of sections 13 and 14, a line extending southerly from the southerly line of said sections along the westerly line of the rancho to a point at and below the southerly limit, and the township line extending north and south dividing township 13 west from township 14 west, without any lines marked or corners appearing thereon indicating any survey of east and west lines through any of the territory lying between the base line and the southerly line of sections 13 and 14, is not a survey into congressional sections, within the meaning of the act of Congress of July 23, 1866, sufficient to

identify the land intended to be assessed as fractional sections 24 and 25.

Id.—Division of Township into Sections.—After a principal meridian and base line have been established and the exterior lines of the township have been surveyed, neither the sections nor their subdivisions can be said to have any existence until the township is divided into sections and quarter sections by an approved survey. The tract has no separate legal identity until the survey is made and approved under the authority of Congress.

Id.—Assessor's Map — Arbitrary Section Line — Insufficient Evidence of Identity.—A map prepared for the assessor under the provisions of section 3658 of the Political Code, on which the section and fractional section lines purported to be drawn, but which lines were not shown to have been located by any actual survey, and to have been merely arbitrarily drawn on paper by the compiler of the map, is not competent evidence *aliunde* from which the identity of the land assessed could be determined.

Id.—Tax Title—Adverse Possession.—As against a purchaser from the state of land acquired by it under a valid sale for delinquent taxes, a title by adverse possession cannot be acquired until the expiration of five years from the date of the sale to the state.

Id.—Tax-Sale—Delay in Publishing Delinquent List.—Under section 3885 of the Political Code a tax-sale is not rendered invalid by reason of the publication of the delinquent tax-list on a day succeeding the time when the publication is required by section 3764 of that code, nor by the fact that the statement attached to the published delinquent list had no affidavit attached showing its verification.

Id.—Deed from State—Tax-Collector May Execute.—A deed from the state for lands sold to it for delinquent taxes, executed by the tax-collector as the agent for the state, is not in violation of section 14 of article V of the constitution.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Monroe, Judge.

The facts are stated in the opinion of the court.

Charles S. McKelvey, and Smith, Miller & Phelps, for Appellant. Walter J. Horgan, *Amicus Curiæ*, for Appellant.

Leslie R. Hewitt, City Attorney, John W. Shenk, City Attorney, and Emmet H. Wilson, Deputy City Attorney, for Respondent City of Los Angeles.

J. W. McKinley, for Respondent Griffith J. Griffith.

THE COURT, Beatty, C. J., not participating.—The decision of the district court of appeal for the second district, in this cause, was vacated and the cause transferred to this court, mainly for the purpose of further considering the sufficiency of the assessor's map, made under the provisions of section 3658 of the Political Code, as a means of identification to supply the defects in the descriptions of land in the assessment and the tax-deeds. The trial court found that it was not sufficient and we are satisfied that we cannot disturb that finding. The opinion of Justice Allen, in the district court of appeal, is appended hereto and adopted as the opinion of this court. Concerning the assessor's map we add the following:—

The section provides that the board of supervisors "must provide and furnish the assessor with the proper books, blanks, maps, and plat-books for the use of his office. Such maps and plat-books shall show the private lands owned or claimed in the county, and if surveyed under the authority of the United States, the divisions and subdivisions thereof, with their acreage, according to such survey; if held under Spanish grant, the exterior boundaries of such grants, the divisions and subdivisions, and number of acres claimed." It also provides that the state board of equalization "may require such map and plat-books to be indexed to show owner's names, give correct description for assessment, show improvements and assessed value." There is no evidence nor claim that the state board ever required any of these things. The copy of the map contained in the transcript shows that it does not comply with such requirements, if they were made, except that the number of acres inclosed by some of the lines marked thereon are indicated by figures followed by the letter "A." The map shows the outlines of a part of the Rancho Los Feliz, but not all of it. These are crossed by north and south lines and east and west lines, dividing the portion platted into squares of equal size inside and fractional parts of squares next to the exterior bounds. There is no evidence that these lines are founded on any survey or that the rancho was ever surveyed and subdivided into lots corresponding to these squares by the owner, or by the assessor, or at all. Section 3629 of said code authorizes the assessor to exact a statement from each landowner containing an exact description of his

lands in parcels and subdivisions, not exceeding 640 acres each. Section 3634 provides that if the owner fails to do this, or fails to give a sufficient description, the assessor may obtain from the superior court an order requiring the county surveyor to survey the land and define the subdivisions for the assessor. There is no evidence that this was done, or that the assessor's map represents any such survey. The maps and plat-books provided for by section 3654 were not intended to represent any actual survey or surveys. The owner is not consulted in their preparation nor allowed any opportunity to see that they are correct, and they are not binding upon him. They are mere compilations embracing the entire county made under the direction of the board of supervisors, or by the assessor, upon such information as may be at hand. They are designed merely to facilitate the business of the office, as a convenient exhibition of all the lands in the county to which the officers can refer in the daily routine of business. It is not shown that the subdivisions indicated on the map by the parallel lines have ever been marked on the ground, or that they coincide with the section lines outside the rancho, or that they can be located by any visible marks or monuments or at all. They are mere arbitrary lines drawn on paper in some office without any reference whatever to actual conditions on the premises. Some one has copied a part of the map of the rancho attached to the record of the patent, and has drawn these lines across his copy so as to make a picture such as might be shown by a map of a part of the congressional townships in which the rancho lies, if such townships had ever been surveyed, subdivided, and mapped through said rancho. As a matter of fact, they never were so surveyed. The picture has no counterpart on the surface of the land. It cannot serve to identify the land, for the location of the tracts indicated cannot be ascertained.

OPINION OF THE DISTRICT COURT OF APPEAL.

The action was one instituted by plaintiff against defendants to quiet title to certain described real estate, plaintiff's title resting upon sales of the premises on account of the nonpayment of delinquent taxes, the validity of which is the sole matter in controversy.

The court finds that plaintiff had no right, title, or interest in said property, and rendered judgment against plaintiff

CLVIII Cal.—45

for costs. From this judgment plaintiff appeals upon a bill of exceptions.

The facts as presented by the record are these:—

The Rancho Los Feliz was granted by the Mexican government in 1843 to one Verdugo, which grant in 1854 was by the land commissioners confirmed, and upon appeal from such confirmation the district court of the United States for the southern district of California, in its December term in 1856, affirmed the decree of said commissioners to the extent of one and one half leagues, the exterior boundaries whereof were defined by the record of juridical possession on file in said case, and the title of said Verdugo was decreed good and valid. Thereafter, in 1871 a patent was issued by the government of the United States to the said Verdugo to the premises so included in said grant and subsequently confirmed, which patent certified that a plat and survey of said lands had been deposited in the general land-office, whereby it appears that said claim had been designated as lot No. 38, in township 1, north of range 13 west; lot No. 38 in township 1, north of range 14 west; lot No. 38 in township 1, south of range 13 west; and lot No. 37 in township 1, south of range 14 west, San Bernardino meridian, containing 6,647.46 acres of land. A copy of such plat and survey was attached to such patent and made part thereof. An examination of such plat shows that the lots No. 38 north of the base line, and being the portion of the rancho in which is situated the property in dispute, were not surveyed or divided into sections. The only lines of survey marked thereon affecting the property in controversy being the base line, a line marking the southerly boundary of sections 13 and 14, a line extending southerly from the southerly line of sections 13 and 14 along the westerly line of rancho to a point at and below the southerly limit, and the township line extending north and south dividing township 13 west from township 14 west. No lines marked or corners appear on the map indicating any survey of east and west lines through any of the territory lying between the base line and the southerly line of sections 13 and 14, which, if the sections were full, would be a distance of three miles. It is true that there appears upon the profile in that portion marked "lot 38" in township 14 west in the southerly part thereof, the word and figures "section 36," and near the

center thereof "section 25," and north of the northerly line
of the rancho the word and figures marked "section 24," but
nothing appears as indicating the dividing line between the
respective sections. Again lot 38 in township 1, north of range
13 west, which extends from the base line northerly at least
two and one half miles, and is almost equal in width
with the other lot 38, has only one section marked thereon,
being designated "section 31," the area of which it is obvious
from the profile must exceed in extent two congressional sec-
tions. It further appears from the record that under these
conditions the lands in question were by the assessor listed
for taxation, and described in such assessment and in all
proceedings thereafter leading up to and including the deeds
to plaintiff as "Ro Los Feliz; 265 acs. being fractional sec.
24 T. 1. N. R. 14, W" in one deed, and in the other deed,
"Ro. Los Feliz 599 acs. being fractional sec. 25, T. 1. N. R.
14 W," there having been a separate deed for each parcel.
The taxpayer named in the assessment owned at the time
thereof the whole of the Los Feliz Rancho. After the assess-
ment for taxation, the taxpayer conveyed a large part of such
rancho, including the premises in controversy, to defendant
city, the same to be used for park purposes, which convey-
ance was made March 5, 1898, and the defendant city has
ever since been in possession thereof, claiming ownership
and making improvements thereon. The attempted sales to
the state, on account of delinquent taxes, were made on July
2, 1898, and the time for redemption expired July 3, 1903.
No redemption being made, the state sold the property to
plaintiff on June 30, 1905. This action was commenced Janu-
ary 3, 1907, and the judgment herein rendered January 7,
1908.

The principal question involved upon this appeal is, Was
the land assessed for the purpose of taxation under a de-
scription sufficient for its identification? Section 3650 of the
Political Code of this state provides that property shall be
listed by the assessor in accordance with the following method:
Land, by township, range, section, or fractional section, and
when such land is not a congressional division or subdivision,
by metes and bounds, or other description sufficient to identify
it, giving an estimate of the number of acres, not exceeding
in each and every tract 640 acres. Any assessment not in

conformity with this section is wholly void. (*Palomares Land Co.* v. *Los Angeles Co.,* 146 Cal. 536, [80 Pac. 931].)

It is insisted by appellant, that fairly considered, the map and profile attached to the patent literally divided these premises into congressional subdivisions, and, therefore, the description in the assessment is technically correct. With this we cannot agree. Assuming that, notwithstanding the particular description in the decree of confirmation, the record of juridical possession on file in said case and the intendments in favor of every judgment, section 8 of the act of July 23, 1866 (Zabriske's Land Laws of the United States, p. 567) and not sections 6 and 7 of the act of 1864 apply to this grant, and that it was the duty of the surveyor-general to cause the lines of the public surveys to be extended through such lands, nevertheless, we think it clear from the plat and profile that such survey as provided by the act of 1866 was never in fact made. Section 2395 of the United States Compiled Statutes 1901, p. 1471, provides: "The public lands shall be divided by north and south lines run according to the true meridian, and by others crossing them at right angles so as to form townships of six miles square. . . .

"Third. The township shall be subdivided into sections containing as nearly as may be 640 acres each, by running through the same each way parallel lines at the end of every two miles; and by marking on each of such lines at the end of every mile. The sections shall be numbered respectively, beginning with the No. 1 in the northeast sections and proceeding west and east alternately through the township with progressive numbers until the 36 be completed. . . .

"Eighth. . . . He shall also cause a fair plat to be made of the townships and fractional parts of townships contained in the lands described, the subdivisions thereof, and the mark of the corner."

It is said by our supreme court in *Bullock* v. *Rouse,* 81 Cal. 594, [22 Pac. 920]: "Even after a principal meridian and a base line have been established, and the exterior lines of the township have been surveyed, neither the sections or their subdivisions can be said to have any existence until the township is divided into sections and quarter sections by an approved survey. The lines are not ascertained by the surveyor, but they are created. . . . The tract has no separate legal identity

until the survey is made and approved under the authority of Congress."

Appellant further contends that, conceding that no such division into congressional subdivisions was ever had, nevertheless, it was competent to show by evidence *aliunde* facts from which the identity of the land assessed could be determined and accordingly offered in evidence a map prepared for the assessor under the provisions of section 3658 of the Political Code, from which map it appears that the Los Feliz Rancho is divided into sections not in conformity with the plat attached to the patent, but by arbitrary lines, and not by fixed congressional districts, and it is claimed that this map identifies the lands assessed beyond the possibility of question. This map is not recorded. There is no provision of law for its record, and it purports upon its face to create for the purposes of assessment that which does not in fact exist. The rule laid down in *Best* v. *Wohlford,* 144 Cal. 737, [78 Pac. 293], is that evidence may be received for the purpose of showing the sufficiency of identification, and whether the description of the land is sufficient to identify it, is a question of fact to be determined from the evidence presented on that issue; that parol proof may be resorted to for the purpose of applying the terms of the description to the face of the earth but no further, and that it cannot supply any deficiencies in the metes and bounds. Applying this rule, the assessor's map could not be placed upon the surface of the ground for the purpose of identifying sections which did not in fact exist. It is not possible to make a description of a tract clear and definite when such tract has no description of the kind and character sought to be defined. The assessor's map could not create a congressional subdivision, and it contains nothing which would establish the identity of the tract or parcel of land sought to be assessed, either by metes and bounds or other descriptive statements designating the property, so that the part of the Los Feliz Rancho sought to be charged with the tax could be ascertained—a necessary thing in proceedings to enforce the collection of a tax (*Labs* v. *Cooper,* 107 Cal. 657, [40 Pac. 1042]).

The trial court impliedly found that this extrinsic evidence offered did not so identify the property sufficiently to enable the owner to determine from any inspection of it what part of

his land was so sought to be assessed, and we think this finding of fact should not be disturbed. The trial court further found that the defendant city had been in the quiet and peaceable possession of all the real property described in the said amended complaint, and hereinbefore described holding and claiming it adverse to plaintiff and adverse to all other persons for more than five years prior to the commencement of this action. We think this finding and the fact upon which it is based is insufficient to establish a prescriptive title in the defendant. Were it conceded that the state acquired a title thereto by the tax proceedings in the deed of the sale for delinquent taxes as against the state, the period of the bar, (Code Civ. Proc., sec 315), is ten years, and as against the plaintiff, five years from the period of the acquisition of title, less than five years elapsing from the date of the sale to the state up to the commencement of the action, we think there is no merit in the claim of prescriptive title alone as supporting the judgment (*Wilhoit* v. *Tubbs,* 83 Cal. 287, [23 Pac. 386].)

Respondent further criticises the proceedings of the officers in and about the assessment and sale of the property in that the delinquent tax-list was sought to have been published on the sixth day of June, 1898, a day succeeding the time when the publication is required by section 3764 of the Political Code. We think this contention is answered in the case of *Buswell* v. *Supervisors,* 116 Cal. 354, [48 Pac. 227], where it is said "that the provisions as to the time upon which or within which acts are to be done by a public officer, regarding the rights and duties of others, are directory unless the nature of the act or language of the legislature makes it clear that the time fixed is by way of limitation," in support of which, section 3885 of the Political Code is cited, which section provided that "no assessment or act relating to assessment or collection of taxes is illegal on account of informality or because the same was not completed within the time required by law." This section, we think, applies as well to the criticisms made on account of the fact that the statement attached to the published delinquent list was not sworn to; that is to say there was no affidavit attached showing its verification.

The point made by respondent as to the form of the tax-collector's deed has been made and disposed of by the decision in *Bank of Lemoore* v. *Fulgham,* 151 Cal. 234, [90 Pac. 936].

Respondent presents no authority in support of its proposition that the sale was invalid, by reason of the fact that the delinquent list did not comply with the form required by section 3764 of the Political Code. This question, we think, has been disposed of in the case of *Carter* v. *Osborn*, 150 Cal. 620, [89 Pac. 608].

As a summary, therefore, we are of opinion that for the reason that the property was not assessed by a description sufficient for identification, the assessment and all proceedings thereunder were void, and that plaintiff was not shown to have any title or interest in the property, and the finding of the trial court in that regard must be sustained.

Rehearing denied.

Beatty, C. J., dissented from the judgment and from the order denying a rehearing, and filed the following opinion on December 31, 1910:—

BEATTY, C. J.—I have always been of the opinion that the property involved in this action was sufficiently described in the assessment, and but for the fact that I was absent at the time the opinion of the court was filed, I should have expressed my dissent at that time. The denial of the petition of plaintiff for a rehearing enables me to record my dissent.