## MANUFACTURING COMPANY v. UNITED STATES.

Where a manufacturer of guns agrees with the government to make and deliver, and the government agrees to receive and pay for, all the carbines of a certain kind (described) not exceeding six thousand, which the manufacturer can make within six months from the date of the contract, and the government afterwards requests that certain alterations may be made in the weapon, to effect which necessarily requires some months, and the alterations (along with others of the manufacturer's own suggestion, which were judicious and materially improved the weapon) were made; the request of the government to make the alterations implies such a reasonable extension of the time as is requisite to make them, and if the government was aware of the progress of the work, and gave no notice that it would refuse to accept the same if not delivered within the six months originally specified, it must be held to be bound by the reasonable intendment above mentioned; and if after the request to make the alterations, the manufacturer proceeded in good faith and without unnecessary delay, the government was bound to accept the six thousand carbines though not delivered within the six months; and having refused so to accept is bound to pay such damages as the manufacturer has sustained by the government's said refusal.

APPEAL from the Court of Claims.

The Amoskeag Manufacturing Company brought suit in the Court of Claims against the United States on a contract, by which the company had agreed to make and deliver, and the United States had agreed to receive and pay for, all the Lindner carbines, not exceeding six thousand, which the company could make in six months from the 15th day of April, 1863, to be approved and inspected by Major Hagner, and by which for each carbine so inspected and delivered the United States was to pay $20.

Immediately after making this contract, the company entered upon the preparations necessary to the performance of the work; and it was found as a fact by the Court of Claims that the company had the necessary means and facilities, and could have delivered the six thousand carbines of the kind contracted for within the six months limited, in conformity with the agreement as first made, had not changes and alterations been desired and requested by the government.

In regard to these changes, the court found that General Ripley, chief of ordnance, by letter of the date of April 23d, 1863, requested certain alterations to be made in the construction of the carbine; that these were made by the contractors as requested, and that these necessitated other changes to make the parts conform, and also alterations in the machinery, and new tools and fixtures to perform the work. Other changes were made in the construction of the weapon by the contractors, on their own motion, which were important and judicious, and which materially improved it. How much time these changes required did not precisely appear; but it was admitted that they necessarily required two or three months, a part of which resulted from the action of the department, and that the contractors proceeded in good faith and without unnecessary delay.

It was further found that, on or about the 5th of April, 1864, the company exhibited one of the weapons for inspection, and gave notice to the department that the company was then ready to commence delivery, and would deliver the entire six thousand as rapidly as the government could inspect them, and asked that they should be then inspected and received by the department, which was not done then and had not since been done. It was further found that inspection of contract arms was always made at the place of manufacture, and was made of the parts of the arm before they were put together. It was also found that the time consumed by the company in filling the contract beyond the time fixed by its terms, to wit, six months, was rendered necessary and indispensable by the changes, alterations, and delays caused solely by and for the interest of the government; and further that the government was aware of the progress of the work, and gave no notice that it should refuse to accept the work if not delivered within the six months. The arms were inspected by a competent person, and found to be according to contract, and were packed in cases and tendered to the government, which refused to receive or pay for them.

The six thousand carbines were still at the time of this

suit, brought March 15th, 1870, in the hands of the company, not having been offered for sale, and on the 21st of March, 1871, when the Court of Claims gave its judgment, were worth, according to the finding of the court, $3 each. Their value or market price at any previous time was not found. The Court of Claims (by an equally divided court) dismissed the petition, and the manufacturing company appealed.

*Mr. G. H. Williams, Attorney-General, and Mr. S. F. Phillips, Solicitor-General, in support of that dismissal:*

The contract was to take, not a definite number of carbines, but all that could be furnished within six months, whether fifty or five thousand, so that they did not exceed six thousand. In other words, the contract was for the results of the industry of the plaintiff on such carbines, limited to six months, be the results small or large, so that the carbines did not exceed, in number, six thousand.

The slight changes suggested by the United States would not, apparently, either by their direct or indirect effect, have diminished the percentage of those results to any considerable extent. The case, as made out by the company, leaves the court ignorant of that extent. The company *mingled* the effect upon the *time* of delivery, of the changes required directly or indirectly by the government, with that of those other *improvements* added of its own head. This is a sort of *voluntary confusion* of effects that justified the decree below.

We need not say how very important *time* is in all matters concerning a flagrant war, or how especially important during the year 1863 of the late war. The variation of a performance under which the government in 1863 might reasonably have expected several thousand arms from time to time within six months, to one in which it was to receive none for a year, was a variation of capital magnitude.

*Messrs. C. F. Peck and W. W. McFarland, contra.*

Mr. Justice MILLER (having recited much as the reporter has given them, the chief points of the findings of the court below) delivered the opinion of the court.

We think that the statement of this case, as it appears in the main points in the findings of the Court of Claims, is the best argument in favor of the claimant that can be made. We cannot believe there would be any hesitation in holding an individual liable who, after making such a contract as was made in this instance, and requesting such alterations for his own benefit, and who, while aware of the increased time necessary, and that the other party was in good faith and with reasonable diligence performing the work, should say, " I will not receive or pay for the work done, because it was not done within the time first stipulated."

There is no reason why the parties should not modify the contract by a change in the character of the weapon and time of delivery; and if it was well known to both that the change in the weapon required a longer time, as the court finds it was, it must be implied that both parties consented to such an extension of time as was necessary or reasonable for the completion of the contract.

The reply to this is, that the United States did not contract for six thousand carbines, but only for so many as could be made and delivered within the six months, and that, notwithstanding the change ordered in their construction, as none were delivered within that time, they were not bound to take any afterwards.

But this is a narrow and incomplete view of the contract. It leaves out the claimant's rights in the matter. The claimant had a right under the original contract to deliver six thousand carbines within six months, and have his pay, if he could make so many within that time. He could have made them all within that time, as found by the court, but for his consent to the request of-the government to change for its benefit the structure of the weapon. As before stated, this request implied such an extension of time as was known to be necessitated by that improvement, and the government must be bound by this reasonable intendment as an individual would have been. As it is found substantially that the claimant was ready and offered to deliver within a reasonable time, he is entitled to such damages as he sus-

tained by the refusal of the government to receive and pay for the arms.

What are those damages? It is not found that the weapons had at any time a market value or current selling price. It is not found what they were worth or could have been sold for at the time they were offered for delivery and refused. They were not then or at any time sold or offered for sale by the claimant. The only criterion of damage furnished is the finding of the court, that the six thousand carbines are now (at the time of the judgment of the court) in the possession of the company, and of the value of $3 each.

As the case stands, we REVERSE the judgment of the Court of Claims, and remand the case, with directions to render a judgment for the claimant for such damages as they may ascertain that the claimant has sustained by reason of the refusal of the United States to accept and pay for the six thousand carbines.