[No. 662. Decided January 24, 1893.]

ANNA SOPHIA BRYGGER, *Executrix*, AND OLE SCHILLESTAD, *Executor*, *Appellants*, v. JOHN SCHWEITZER AND NANCY A. SCHWEITZER, *Respondents*.

PUBLIC LANDS — UNIVERSITY GRANT — SELECTION OF. ENTERED LANDS — EFFECT OF CANCELLATION OF ENTRY — WHEN OCCUPANT ENTITLED TO VALUE OF IMPROVEMENT.

The sale by the Territory of Washington of lands granted for university purposes under the acts of congress of July 17, 1854, and March 14, 1864, the selection having been approved by the secretary of the interior, confers upon the purchaser and his grantees a title superior to that obtained by a subsequent patentee from the government of the same lands.

Although the Territory of Washington may, under the act of congress of July 17, 1854, have selected certain lands upon which there was a homestead entry as a part of its university grant, yet such selection will become effectual as a grant where it has been maintained and acted upon by the territory and its grantees continuously until the cancellation of such homestead entry.

One who files a homestead entry upon lands subsequent to their selection by the territory for university purposes, under congressional grant, does not become a *bona fide* occupant under color of title entitling him to the value of his improvements made upon the land, although such homestead entry may, through error of the commissioner of the land office, have been recognized as a valid one by the issuance of a patent.

*Appeal from Superior Court, King County.*

*Jenner, Legg & Williams, Jacobs & Jacobs,* and *W. Lair Hill,* for appellants.

*Thompson, Edsen & Humphries,* for respondents.

The opinion of the court was delivered by

Hoyt, J.—Appellants brought this action to have the defendants declared to hold the title to certain property described in the complaint as their trustees, and to have the title decreed to and quieted in them.    The court below, after hearing, dismissed the action, and plaintiffs have appealed.

The respondents' first contention is, that the complaint is insufficient to support the case made by the proofs, if one is made.    It is no doubt true that the complaint is not as full in some respects as it should have been, but, after a somewhat careful examination of all the pleadings and of the proofs, we are satisfied that the respondents were not misled to their prejudice in the presentation of their case, or in meeting that of the plaintiffs, by any errors or omissions in the complaint; and, such being the fact, and this being a suit in equity, we shall disregard any technical errors in the pleadings, and proceed to determine the rights of the parties upon the proofs.

Plaintiffs claim under a university selection, made by the Territory of Washington under the act of July 17, 1854, and by virtue of the provisions of the act of March 14, 1864; and the first question to be determined is as to whether or not they have any standing in court by virtue of such selection.    If they have not, of course they must fail in their action, however erroneous may have been the action of the land department in issuing the patent to the respondents.    A stranger could not interfere to protect the rights of the United States or any other person.    Do

the facts shown by the proofs establish a *prima facie* claim upon the part of the plaintiffs, independent of any questions growing out of the claim of the respondents? As to this question, it is not necessary for us to say more than that it seems to have been decided in favor of the rights of the plaintiffs by this court in the case of *Keane v. Brygger*, 3 Wash. 338 (28 Pac. Rep. 653). From what was said in that case, and from the action of the general land office in regard to the rights of a person holding under a university selection in all respects similar to this, it follows that, if no rights had interfered to prevent such action, the title of the plaintiffs would have been affirmed and made perfect by the action of the secretary of the interior as to the piece of land in controversy in this action, as it was to that involved in the case above cited. But for the intervention of the claim of the respondents, the title of the plaintiffs would have been made perfect by the action of the land department, and that which would have had the force of a patent would have been granted to them. They are, therefore, in a condition to assert their rights as against the United States if the title was still vested in it; and, the title having passed to the respondents, they are in a situation to likewise assert their right as against them; and if, from all the facts in the case, it appears that their rights are superior to those of the respondents, so that, but for mistake or inadvertence on the part of the land department, the title would have passed to them, instead of to the respondents, it will be the duty of the court to give them the benefit of such title as they would have obtained from the United States but for its error in wrongfully passing the title to the respondents.

The first question above suggested having been determined in favor of the plaintiffs, we must enter upon an examination of the rights of the respondents, and see whether or not they are superior to those of the appellants. Re-

spondents claim by virtue of a homestead entry made in 1879, and if at that time, under all the facts shown in the record, the land was a part of the public domain, unoccupied and unappropriated, the respondents' rights, founded upon such homestead entry, would, in the regular course of business, have rightfully culminated in the passage of the legal title to them. The important question, therefore, is as to whether or not the land in question was covered by the university selection at the date of the said homestead entry. It is objected upon the part of the respondents that much of the proof introduced by the appellants to establish the regularity of the university selection was of a date subsequent to the issuance of the patent, and that as, by the issuance of said patent, the jurisdiction of the land department over said land was terminated, such proofs were incompetent and could in no manner affect the rights of the respondents under said patent. This would doubtless be true if the patent had issued regularly, and not in fraud of the rights of the plaintiffs, or those under whom they hold. But such was not the case. Prior to the issue of said patent, a contest had been waged in the land office on behalf of the university selection, and the entry of the respondents at one time held for cancellation. It was afterwards, by the action of the commissioner of the general land office, reinstated and the university selection held for cancellation. From the action of the commissioner in thus holding the university selection for cancellation, an appeal to the secretary of the interior was duly taken and perfected, and under a uniform course of practice in the department of the interior no action could properly be taken in regard to said homestead entry until such appeal had been heard and decided. Notwithstanding such practice, by some inadvertence on the part of the commissioner of the general land office, final proof was authorized to be taken as to the homestead entry of respondents, and upon

the return of such proofs to his office the patent was issued. Under these circumstances the issue of the patent was clearly irregular, and could in no manner affect the rights of those who at the date of its issue were duly prosecuting such appeal from such decision of the commissioner of the general land office. The only effect of the issuing of the patent under these circumstances was to transfer the legal title to the respondents and make it necessary for those who otherwise would have been entitled to have their adverse claims adjudicated in the land office, to have them adjudicated in the courts; and if in the courts they are able to establish such a state of facts as would have entitled them to the patent, if not already issued, at the hands of the United States, then the courts must see that they get the same benefit by decreeing the title held by the respondents to be so held for the use and benefit of such adverse claimants.

It is further objected upon the part of the respondents that neither the plaintiffs nor any one else made any objection to the taking of such final proofs on the part of the respondents. But, in view of what we have just said, the allowing of such proofs to be taken pending the appeal to the secretary of the interior was clearly irregular, and for that reason no one could lose rights which they already had by virtue of their contest in the land department, on account of a failure to appear and contest the making of such final proofs. These considerations show that, in our opinion, the contention of the respondents that nothing that was done in the land department after the issuance of the patent could be of any avail to plaintiffs, is untenable. It is true that after such issuance the land department could not interfere with the title to the land, but, if such title passed from the government pending the decision of a question necessarily involved in such issuance, such land department must be held to have jurisdiction to continue

that contest to a proper determination, and its findings of fact in relation thereto will be as binding upon the courts, in determining as to whether or not an equitable as well as a legal title passed by said patent, as though they had been found before the same was issued. However, as we look at the proofs, it sufficiently appears that the land department was in full possession of the facts, which in the Jensen case were determined by it to be sufficient to show that the land had been regularly withdrawn from settlement from the date of its selection in 1864, before the date of the issuance of said patent; and, as the facts in that case and this one were exactly the same, it follows that at the time such patent was issued such facts were before the land department as, under its view of the law, as shown in the said Jensen case, would have prevented the issuance of such patent, and would have compelled the cancellation of the homestead entry of the respondents, and the certification of the land under the provisions of said act of March 14, 1864. It is true, perhaps, that all of these facts did not reach the land department in the ordinary and regular course of the contest between those holding under the university selection and the homestead entry, but they were all before the land department in some way, and its attention called to the same, before the issuance of said patent; and, in view of the practice of said department to relieve parties against inadvertence in not making a full showing in the original contest when the facts are shown even upon appeal, it must be presumed that, if facts in any shape were before the secretary of the interior prior to the issuance of the patent, which satisfied him that under the law the university selection was good, and that those holding under it should be protected, he would see that such protection was given, either by allowing the additional facts to be made a part of the record in the case before him, or by ordering a re-hearing before the commissioner or the register and re-

ceiver of the local land office, as to him might seem proper. As to whether or not the secretary of the interior correctly interpreted the law in the Jensen case is not now an open question here, on account of the above cited decision of this court.    In our opinion, under the circumstances under which this patent issued, the fact that it has so issued cannot at all control the limits of the inquiry in this case. The only effect which it can have is to compel us to make the inquiry and determine the law upon the facts, and enforce our conclusions as to the title as against the respondents by appropriate decree, instead of the land department being called upon to make such investigation, and by its patent place the title where, under the facts and the law, it belongs.    Thus far we have discussed the case upon the theory that the fact that Lemuel J. Holgate relinquished his homestead entry before the date of the university selection was essential to the upholding of said selection, and we have simply followed the ruling of the secretary of the interior in the Jensen case, and assumed that a like ruling would have been had in this, as the facts are exactly the same, if the land office had not been deprived of jurisdiction by the inadvertent issue of the patent.

This is sufficient to decide the case, but another very important question is presented by the record.    It is conceded that the homestead entry of Lemuel J. Holgate was duly canceled in 1871.    The university selection was made in 1864.    No adverse interest in the land was asserted by any one until 1879.    Thus, even if we assume that the relinquishment by said Holgate in 1864 was not in this case, or was not effectual, the fact would still exist that from 1871 until 1879 this land was vacant public land, except as affected by said university selection.    Such being the case under the proof shown by this record, we think the selection, even though ineffectual before, became fully effectual upon the cancellation of the said homestead entry

in 1871. It is true that, as a general rule, grants which are not effectual by reason of some adverse claim to the land at the date thereof will not become effectual upon the termination of such adverse claim. Respondents have cited a large number of cases to sustain this doctrine. We have given them a somewhat careful examination. But, in our opinion, they do not affect the question at bar. They simply go to the question of the effect of a present grant, which by its terms does not take effect upon certain lands. In such a case the courts have universally held that, if it did not thus take effect, it would never take effect. The most of these decisions have been in reference to land grants to railroads, or to states for railroad purposes, but the grants which have been construed by the courts in these cases were special grants of land within certain limits to which no adverse claim existed. And it is clear that such a grant must take effect at once on all that it can ever cover. Such are the very words of the grant. Lands within certain definite bounds are granted, but it is provided that as to any of the lands thus described, to which adverse interests obtain, the grant shall not take effect; and the decisions cited by respondents only give effect to the language of the grant. But in the case of selections like the one under consideration, an entirely different question is presented. Here there is no grant of any definite description of land. Full authority is given to the territory to determine as to what lands are to be covered by the grant. The only limitation upon such authority is that in its exercise the rights of adverse claimants shall not be interfered with. If, at the time a selection is made, there is an adverse claim to the land, the selection must yield to it; but it may well be held that the selection is effectual for all purposes excepting as against the one having the adverse claim, and upon its termination the selection have force as against the government. An appli-

cation of the universal rules of construction as to questions
of this kind will compel us to hold that such was the effect
of the selection of the land in question.     But, even if such
is not the law, the facts of this case bring it in principle
within the decision of the supreme court of the United
States in *Durand v. Martin,* 120 U. S. 366 (7 Sup. Ct. Rep.
587), for, in our opinion, the action of the authorities of the
territory in maintaining this selection by themselves or by
their grantees should be treated as a new selection each
day that it is so continued.    It would follow that upon the
cancellation of the Holgate entry in 1871, the selection be-
came effectual.

In the case above cited it is held that an assertion of
rights under a selection at a time when the land was sub-
ject to such selection will have force, even although at the
time the original selection was made there were existing ad-
verse claims to the land, which made it incapable of selec-
tion; and under the facts shown in this record we think that
it must be held that the territory was asserting its rights
under said selection, and seeking to have it certified under
the act above cited at all times from the date of such selec-
tion up to the time that the land department of the United
States lost jurisdiction of the land.    It is perhaps true that
the territory was not actively importuning the land depart-
ment all or any of the time, but it had sold the land, and,
under the provisions of the act of congress above cited, a
*bona fide* grantee became the owner thereof as against every-
body, even the United States.    The only thing necessary
for him to do to make his title perfect was, to establish the
fact that he was a purchaser of the territory in good faith.
If he was such purchaser, then his equitable title to the land
was perfect, and the certification by the secretary of the
interior upon proof of such facts was only necessary to pass
to him the legal title.    Under these circumstances, when-
ever the grantee of the territory asserted any right to the

land, he must be held to have so asserted it by virtue of such selection, and to have in effect, on each and every day during which he claimed any rights to the land under his purchase from the territory, asked in the name of the territory that his title under such selection be recognized and perfected. If such be the effect of the acts of the grantee of the territory, enough appears in the record to show that the selection was many times made effectual, under the ruling of the supreme court above cited, by the acts of the plaintiffs, or those under whom they claim. In our opinion, the land department committed an error of law in holding the university selection for cancellation, and reinstating the homestead entry of the respondents. It follows that, in our opinion, the selection was effectual from its date, and that, if it was not, it became effectual upon the cancellation of the Holgate entry in 1871, eight years before there was any attempt to enter the lands by the respondents. Hence the rights of the respondents are inferior to the rights of the appellants, and the decision of the lower court holding otherwise was erroneous, and must be reversed.

There is still left the question as to what equity demands in the disposition of the case. In our opinion, the rights of all will be best subserved by a reversal of the decree dismissing the bill, and a remittance of the cause to the court below, with instructions to take proofs—*First*, As to what the land would now be worth if no improvements had been made thereon by the respondents; *second*, as to the cash value of all the improvements made by the respondents; and, *third*, as to the reasonable value of the use and occupation of the land by the respondents. That upon such proofs the court shall find the facts in relation to each of these questions, and thereafter decree to plaintiffs, at there option, a sum equal to the value of the land so found, and make such decree a lien enforceable against the land by sale thereof,

or decree to them the absolute title to such land upon the payment by them of the value of the improvements made by the respondents, less the value of the use and occupation of the premises by them.    It is therefore ordered that the judgment and decree be reversed, and the cause remanded with instructions to proceed in accordance with this opinion.

DUNBAR, C. J., and SCOTT, ANDERS, and STILES, JJ., concur.

### ON PETITION FOR RE-HEARING.

HOYT, J.—In due time after the decision of this cause a petition for re-hearing was filed by the respondents.    More than a month thereafter they filed a petition, supported by affidavits, to be allowed to introduce further proofs upon the merits of the controversy covered by the decision of the cause.    Such petition states nothing to show why it was not filed before or at the time of the filing of the petition for re-hearing.    Without some reason being given for the delay, it is not entitled to be considered.    If, without any explanation of the reasons for such a course, motions or petitions in causes before this or any other court are filed out of their proper time, it will tend greatly to embarrass the administration of justice, and such a practice cannot with propriety be allowed.    Especially is this true where the petition, like the one at bar, seeks to take advantage of a purely legal defense which does not very largely appeal to the conscience of a court of equity.    The petition to be allowed to introduce further proofs must be denied.

The petition for re-hearing does not seriously attack the conclusions of this court in deciding the cause, so far as they determine that the appellants were in equity the owners of the property.    The principal contention in such petition is as to the proper rule by which to determine the equities of the parties in adjusting the rights growing out

of the improvements made upon the land by the respondents, and of their liability to the appellants for the use and occupation thereof. In discussing this question, the petition has assumed as a basis for argument the fact that the respondents had made such improvements as *bona fide* occupants of the property under color of title. Upon this basis it presents a strong case in favor of the rule therein contended for, and cites a large array of authorities in support of such rule. And if we could agree that the facts shown by the record warranted the assumption of such a basis for argument, we should doubtless agree with the respondents in their contention that the rule heretofore announced by this court was not according to the principles of equity. But, as we understand the law, the basis upon which the argument is predicated can only exist where one occupies the land of another under color of title in good faith without any knowledge whatever of the claim of the real owner. The facts of this case fail entirely to put the respondents in any such position. Not only is it not made to appear that they are such occupants, but on the contrary it affirmatively appears with reasonable certainty that they in no sense occupy such a relation to the land, and to the title of appellants. From all the circumstances surrounding the case, we are satisfied that at the time respondents entered upon the land it was in the possession of appellants, or those under whom they hold; that it was well known by all that such possession was founded upon an entry, or attempted entry, of the land by agents of the territory for university purposes. And it was only upon the assumption that such attempted selection for university purposes had been for some technical reason ineffectual, that they expected to maintain their entry thereof as a homestead. In other words, the respondents, at the time they made entry of the land, knew all about the claim of the appellants, or those under whom they hold, and knew

that any right which they might assert, or possession which they might maintain as to the premises, was in direct opposition to the claim of appellants. They further knew that appellants, or those under whom they hold, were actively asserting an adverse claim to the land. Not only was this state of facts existing when the entry was made, but the same has continued until this time. At all times since said entry the appellants, or those under whom they hold, have been actively asserting a claim to the premises adverse to that of respondents, which claim has by the adjudication of this court now been held to have been at all times well founded.

Under these circumstances, the improvements made by the occupant cannot be said to have been made in good faith, and without knowledge of the adverse claim, and the rule contended for by the respondents cannot be invoked in the adjustment of the equities of the parties. In fact it is very doubtful whether or not under a strict construction of the rights of the respondents they would be entitled to any relief at all on account of the improvements made by them upon the premises. But in view of the hardship of the case if they were allowed nothing for such improvements, we made the direction which we did in deciding the case, and we feel now as we did then, that it was as favorable to the respondents as the facts would warrant.

The petition for re-hearing must be denied.

DUNBAR, C. J., and STILES, ANDERS and SCOTT, JJ., concur.