SAWYER et al. v. GRAY et al.

(District Court, W. D. Washington, S. D.   April 10, 1913.)

No. 1,696.

1. PUBLIC LANDS (§ 122*)—PATENTS—SUIT FOR CANCELLATION.
    A private individual cannot maintain a suit for the cancellation of patents to public lands issued by the United States.
    [Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 339, 340; Dec. Dig. § 122.*]

2. PUBLIC LANDS (§§ 25, 32*)—EFFECT OF SURVEY—ENTRY OF UNSURVEYED LANDS.
    The government survey creates, and does not merely identify, sections of land, and a filing of selections of lieu lands by numbered sections before survey is wholly ineffective.
    [Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 33, 34, 54–56; Dec. Dig. §§ 25, 32.*]

3. PUBLIC LANDS (§ 125*)—EXCHANGE FOR LANDS IN FOREST RESERVATION—SELECTION OF LIEU LANDS—RIGHTS OF APPLICANT.
    The right given by Act June 4, 1897, c. 2, 30 Stat. 36 (U. S. Comp. St. 1901, p. 1541), to an owner of patented land within a forest reservation to surrender his title to the United States and select in lieu thereof an equal quantity of other public lands open to settlement is a substantial right, and by the due and regular filing of his application for such exchange, where the land selected is of the character contemplated by the act, he acquires a right and interest therein which will support a suit in equity to charge a subsequent patentee as trustee, when through mistake of law or fact the Land Department has not acted on his application.
    [Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 341; Dec. Dig. § 125.*]

In Equity.   Suit by W. G. Sawyer and Frances Sawyer, his wife, and Alfred C. Tuxbury and Luna B. Tuxbury, his wife, against Raymond S. Gray and Sena Gray, his wife, W. A. Gray and Lois Gray, his wife, Charles S. Forbes and Adelaide F. Forbes, his wife, Frank L. Huston, John H. Patten and Dora W. Patten, his wife, W. W. Barr and Gertrude G. Barr, his wife, and the Milwaukee Land Company.   On demurrer to second amended bill for want of equity. Overruled.

Herbert S. Griggs, of Tacoma, Wash., for complainants.

F. M. Dudley and George W. Korte, both of Seattle, Wash., for defendant Milwaukee Land Co.

W. A. Reynolds, of Chehalis, Wash., for defendants Gray.

Peters & Powell, of Seattle, Wash., for defendants Barr.

CUSHMAN, District Judge.   This matter is for decision upon the demurrer of certain of the defendants to the second amended bill of complaint for want of equity.   The bill contains the following allegations:

That complainants are citizens of the United States.   That, in 1899, the state of Washington requested the Department of the Interior, pursuant to the act of August 18, 1894, for a survey of certain lands,

including those in dispute, at which time the latter were unappropriated, unsurveyed public lands of the United States. The lands were surveyed and plat filed April 10, 1901. By the terms of this act the state of Washington was allowed until June 9, 1901, to make its selection. It filed its list of selections June 6, 1901; but in this list the land in dispute was not included.

Prior to this F. A. Hyde & Co. had obtained patent to certain lands in California, which had been included in a forest reserve established by the United States, which lands F. A. Hyde & Co. relinquished and conveyed to the United States, recording the conveyance, furnishing an abstract of title thereto, showing chain of title to the land so relinquished from the government back to the United States. In lieu of the lands so relinquished, March 9, 1900, they made application to the proper land office for the lands in dispute, which were then vacant, nonmineral public lands, subject to selection, and did not exceed in area the lands relinquished.

The Department of the Interior, December 21, 1901, held the application invalid because made during the 60 days allowed by the act for the state's selection. March 3, 1902, after the 60 days had elapsed, Hyde & Co. made another selection of the lands in question, which were then surveyed public lands of the United States, unappropriated and subject to entry and selection, in lieu of certain other base lands, included in a forest reservation, theretofore surrendered to the United States government, an abstract of title being furnished with proof, showing that such were free from incumbrances, with all taxes paid, and complied with all of the regulations of the Land Department of the United States.

This second application was received by the land office and forwarded to the Commissioner of the General Land Office for consideration and approval. Complainants are the grantees of Hyde & Co. and the applications made by that company were for complainants' benefit. On March 21, 1902, the Land Department of the United States made an order, suspending all further proceedings on all entries made with the so-called "Hyde script," which order has never been revoked and is still in force. No hearing has been had, or action taken by the Land Department since, on complainants' second application.

In 1906 and 1907, patents were issued for the lands in dispute to certain of the defendants and the grantors of the remaining defendants. Complainants assert that, by each of these selections, they became the equitable owners of these lands. That the defendants had knowledge of complainants' prior rights; but complainants were ignorant, until shortly prior to the commencement of this suit, of the attempted entry by defendants.

It is further alleged that the patents were issued by mistake; that the United States officials overlooked the fact that the second application of Hyde & Co. was still pending before the Land Department. The prayer is that complainants be decreed the owners, and that it be further decreed that defendants hold the title in trust for them. An

alternative prayer is made to have the patents to the defendants canceled.

Complainants rely upon the following authorities: Smelting Co. v. Kemp, 104 U. S. 636, 26 L. Ed. 875; Turner v. Sawyer, 150 U. S. 586, 14 Sup. Ct. 192, 37 L. Ed. 1189; Bohall v. Dilla, 114 U. S. 47, 5 Sup. Ct. 782, 29 L. Ed. 61; Frisbie v.·Whitney, 9 Wall. 187, 19 L. Ed. 668; Shepley v. Cowan, 91 U. S. 330, 23 L. Ed. 424; Weyerhaeuser v. Hoyt, 219 U. S. 380, 31 Sup. Ct. 300, 55 L. Ed. 258; Gibson v. Chouteau, 13 Wall. 92, 20 L. Ed. 534; U. S. v. Detroit Lbr. Co., 200 U. S. 321, 26 Sup. Ct. 282, 50 L. Ed. 499; Sjoli v. Dreschel, 199 U. S. 564, 26 Sup. Ct. 154, 50 L. Ed. 311; St. Paul Co. v. Winona Co., 112 U. S. 720, 5 Sup. Ct. 334, 28 L. Ed. 872; Duluth R. R. v. Roy, 173 U. S. 587, 19 Sup. Ct. 549, 43 L. Ed. 820; Bodly v. Taylor, 5 Cranch, 191, 3 L. Ed. 75; Sanford v. Sanford, 139 U. S. 642, 11 Sup. Ct. 666, 35 L. Ed. 290; Barnard v. Ashley, 18 How. 43, 15 L. Ed. 285; Garland v. Wynn, 20 How. 6, 15 L. Ed. 801; Sherman v. Buick, 93 U. S. 209, 23 L. Ed. 849; Lee v. Johnson, 116 U. S. 48, 6 Sup. Ct. 249, 29 L. Ed. 570; Bagnell v. Broderick, 13 Pet. 436, 10 L. Ed. 235; Meader v. Norton, 11 Wall. 442, 20 L. Ed. 184; U. S. v. Great Falls Co., 112 U. S. 645, 5 Sup. Ct. 306, 28 L. Ed. 846; Salomon v. U. S., 19 Wall. 17, 22 L. Ed. 46; Amoskeag Co. v. U. S., 17 Wall. 592, 21 L. Ed. 715; U. S. v. Smith, 94 U. S. 214, 24 L. Ed. 115; U. S. v. Peck, 102 U. S. 64, 26 L. Ed. 46; Chicago Co. v. U. S., 104 U. S. 680, 26 L. Ed. 891; U. S. v. State Bank, 96 U. S. 30, 24 L. Ed. 647; Marine Ins. Co. v. Hodgson, 7 Cranch, 332, 3 L. Ed. 362; Veazie v. Williams, 8 How. 161, 12 L. Ed. 1018; McQuiddy v. Ware, 20 Wall. 14, 22 L. Ed. 311; Williams v. Gibbes, 20 How. 535, 15 L. Ed. 1013; U. S. v. McClure (C. C.) 174 Fed. 510; U. S. v. Hyde et al. (C. C.) 174 Fed. 175; Brundy v. Mayfield, 15 Mont. 201, 38 Pac. 1067; McHenry v. Nygaard, 72 Minn. 11, 74 N. W. 1106; Galliher v. Caldwell, 3 Wash. T. 501, 18 Pac. 72; Hedrick v. Atchison, T. & S. F. R. Co., 120 Mo. 540, 25 S. W. 759; U. S. v. Citizens Co., 19 Okl. 585, 93 Pac. 448; Janes v. Wilkinson, 2 Kan. App. 361, 42 Pac. 735; Watt v. Amos, 14 Okl. 178, 79 Pac. 109; Brygger v. Schweitzer, 5 Wash. 564, 32 Pac. 462; Gage v. Gunther, 136 Cal. 338, 68 Pac. 710, 89 Am. St. Rep. 141; Hanna v. Haynes, 42 Wash. 284, 84 Pac. 861; 2 Story on Equity Jur. 694.

Defendants rely on the following authorities: Doolan v. Carr, 125 U. S. 618, 8 Sup. Ct. 1228, 31 L. Ed. 844; Caha v. U. S., 152 U. S. 211, 221, 14 Sup. Ct. 513, 38 L. Ed. 415; Cosmos Co. v. Gray Eagle Co., 190 U. S. 301, 309, 23 Sup. Ct. 692, 47 L. Ed. 1064; Smelting Co. v. Kemp, 104 U. S. 636, 637, 26 L. Ed. 875; U. S. v. Curtner (C. C.) 38 Fed. 1, at 9–10; James v. Germania Iron Co., 107 Fed. 597, 600, 46 C. C. A. 476; Le Marshel v. Teagarden (C. C.) 152 Fed. 662, 665, 666; Durango Land & Coal Co. v. Evans, 80 Fed. 425, 430, 25 C. C. A. 523; Campbell v. Weyerhaeuser, 161 Fed. 332, 88 C. C. A. 412; U. S. v. McClure (C. C.) 174 Fed. 510, affirmed 187 Fed. 265; So. Pac. R. Co. v. Burlingame, 5 Land Dec. Dept. Int. 415, 417; Robinson v. Forrest, 29 Cal. 317, 325; Middleton v. Low, 30 Cal. 596–604, 605; Bullock v. Rouse, 81 Cal. 590, 22 Pac. 919, 920; Smith v. City

of Los Angeles, 158 Cal. 702, 112 Pac. 307, 310; Zeigler v. State of Idaho, 30 Land Dec. Dept. Int. 1; McFarland v. State of Idaho, 32 Land Dec. Dept. Int. 107; Kay v. State of Montana, 34 Land Dec. Dept. Int. 139; Thorpe et al. v. State of Idaho, 35 Land Dec. Dept. Int. 640; Id., 36 Land Dec. Dept. Int. 479; Pacific Live Stock Co. v. Isaacs, 52 Or. 54, 96 Pac. 460, 464; Baldwin v. Keith, 13 Okl. 624, 75 Pac. 1124; Loney v. Scott, 57 Or. 378, 112 Pac. 172, 175, 32 L. R. A. (N. S.) 466.

[1] Suit to have the patents canceled cannot be maintained by complainants, and will only be entertained on complaint of the United States. U. S. v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93; 32 Cyc. 1051-1055.

[2] The township plat having been filed in April, 1901, the lands in dispute were unsurveyed at the time of the first alleged selection, in March, 1900. The government survey creates, not merely identifies, sections of land. There were no such lands as those described in the first application at the time of selection. U. S. v. Curtner (C. C.) 38 Fed. 1, at 9 & 10; So. Pac. R. Co. v. Burlingame, 5 Land Dec. Dept. Int. 415, 417, and cases cited; Robinson v. Forrest, 29 Cal. 317, 325; Middleton v. Low, 30 Cal. 596, 604, 605; Bullock v. Rouse, 81 Cal. 590, 22 Pac. 919, 920; Smith v. City of Los Angeles, 158 Cal. 702, 112 Pac. 307, 310.

Act March 3, 1893, c. 208, 27 Statutes at Large, p. 592, provides:

"That the states of North Dakota, South Dakota, Montana, Idaho, and Washington shall have a preference right over any person or corporation to select lands subject to entry by said states granted to said states by the act of Congress approved February twenty-second, eighteen hundred and eighty-nine, for a period of sixty days after lands have been surveyed and duly declared to be subject to selection and entry under the general land laws of the United States: And provided further, that such preference right shall not accrue against bona fide homestead or pre-emption settlers on any of said lands at the date of filing of the plat of survey of any township in any local land office of said states."

On May 10, 1893, the Department of the Interior promulgated certain regulations to carry this statute into effect. Section 2 provided:

"During said period of sixty days no person not claiming in virtue of settlement existing at the date of the filing of the plats, nor corporation, will be allowed to enter the lands subject to selection by the respective states; but the law cannot be held to inhibit, during said period, the selection of lands previously granted to a corporation by Congress, as, for instance, the granted sections within the primary limits of a railroad grant." 16 Land Dec. Dept. Int. 462.

The Lieu Land Act provides:

"That in cases in which a tract covered by an unperfected bona fide claim or by a patent is included within the limits of a public forest reservation, the settler or owner thereof may, if he desires to do so, relinquish the tract to the government, and may select in lieu thereof a tract of vacant land open to settlement not exceeding in area the tract covered by his claim or patent; and no charge shall be made in such cases for making the entry of record or issuing the patent to cover the tract selected: Provided further, that in cases of unperfected claims the requirements of the laws respecting settlement, residence, improvements, and so forth, are complied with on the new claims, credit being allowed for the time spent on the relinquished claims." Act June

4, 1897, c. 2, § 1, 30 Stat. 36, 7 Fed. Stat. Ann. 314 (U. S. Comp. St. 1901, p. 1541).

At the time of the first application for these lands, in March, 1900, they were not subject to selection. No rights thereto attached by reason of the attempted selection and the applications, therefore, were properly rejected by the Interior Department as prematurely made. Zeigler v. State of Idaho, 30 Land Dec. Dept. Int. 1; McFarland v. State of Idaho, 32 Land Dec. Dept. Int. 107; Kay v. State of Montana, 34 Land Dec. Dept. Int. 139; Thorpe et al. v. State of Idaho, 35 Land Dec. Dept. Int. 640, 36 Land Dec. Dept. Int. 479.

Defendants contend that the bill does not allege sufficient facts to show a compliance by complainants and their grantors with the law and regulations governing the selection of lands, in lieu of those owned in a forest reserve. Under the rules recently promulgated by the Supreme Court, sufficient is alleged in this respect:

"Hereafter it shall be sufficient that a bill in equity shall contain, in addition to the usual caption: * * * Third, a short and simple statement of the ultimate facts upon which the plaintiff asks relief, omitting any mere statement of evidence." Rule 25.

See, also, rule 29.

[3] Defendants earnestly contend that, even if the lands applied for were subject to selection, and the complainants and their grantors have in all things complied with such statutes and regulations of the Department of the Interior, and even if, in the administration of public lands, the officers of the Interior Department would have had authority to accept the proffered lands and patent those in dispute to complainants, yet, by merely making and filing the application and offer required, complainants would not acquire such an equitable title to or interest in the lands, or so bring themselves into privity with the United States as to entitle them to maintain this suit. To establish this contention, defendants rely upon the following decisions: Cosmos v. Gray Eagle Co., 190 U. S. 301–310, 23 Sup. Ct. 692, 47 L. Ed. 1064; U. S. v. McClure (C. C.) 174 Fed. 510; Hoyt v. Weyerhaeuser, 161 Fed. 324, 88 C. C. A. 404.

Much that is said in Cosmos v. Gray Eagle Co., if considered apart from the facts of that case, supports the defendants' contention. The scope of the decision is disclosed in the second syllabus:

"The courts cannot be called upon, in advance of, and without reference to, the action of the Land Department, to determine the right and title of a person, who has surrendered lands under the act of June 4, 1897, and selected others, in the lands so selected, or to render a final decree determining the interest of the parties to the action in such lands, while the questions in relation to the title are still properly before the Land Department and have not yet been decided."

In that case the right to select the land depended upon whether it was mineral or nonmineral in character—a question which has always been held, in acquiring title from the government, to be peculiarly for the determination of the Land Department in the first instance.

"It will be noticed that the bill in this case alleges the proceeding before the local land officers, and also that defendants filed a protest, and that the

questions raised thereby are still before the Land Department and not yet decided. The complete equitable title of the complainant is not therefore made out, and cannot exist until a favorable decision by that department has been made regarding the sufficiency of complainant's proof of his right to the selected land. That question the department is competent, and it is its duty, to decide. It may be that when the decision of the Land Department is made, if it be favorable to the applicant, the complete equitable title claimed will accrue from the time the selection of the lands was made in the local land office, and when the patent subsequently issues the legal title will vest from the time of selection. But before any decision is made how can there be an equitable title? * * * The ground upon which complainant insists that it is the equitable owner of the land selected is that it has relinquished a title in fee in a forest reservation, and has selected in lieu thereof vacant land open to settlement, and that the local land officers duly accepted, received, and filed the deed of the land relinquished, and the affidavit that the land selected was nonmineral, and that the officers duly entered such selection upon the official records of the land office, and then and there certified that the land selected was free from conflict, and that there was no adverse filing, entry, or claim thereto. Complainant asserts that was all that it could reasonably do, that nothing remained on its part to do, and that, when such is the case, the equitable title vests, and it is entitled to the protection of a court of equity to preserve and defend the title so acquired. * * * But even the complete equitable title asserted by complainant must, as it would seem, be based upon the alleged right of the local land officers to accept the deed and approve the selection, even though such approval may be thereafter the subject of a review in the nature of an appeal from the action of the local officers. There must be a decision made somewhere regarding the rights asserted by the selector of land under the act, before a complete equitable title to the land can exist. The mere filing of papers cannot create such title. The application must comply with and conform to the statute, and the selector cannot decide the question for himself. * * * These assertions may or may not be true. Who is to decide?" Cosmos Co. v. Gray Eagle Co., supra.

The writer of the opinion half answers his own question in this decision, when it is determined that, before patent, the question is to be solely determined by the Department of the Interior. Impliedly, it is therein decided that, after the issuance of patent, the question is to be determined by the court having jurisdiction.

The foregoing quotation shows a recognition of the doctrine of relation, as applicable to a lieu land selection. In Hoyt v. Weyerhaeuser. supra, relied upon by defendants, it is expressly decided that the rule of relation does not so apply.

If the filing in the local land office of a complete and regular application and selection of lieu land is not the initiation of a right thereto, there would appear to be no reasonable way to determine the better right of two applicants for the same land under the Lieu Land Act applicable to forest reserves. In view of the long-established rule of "first in time, first in right," in the administration of public lands, it certainly is not to be presumed, in the absence of express statutory provision to that effect, that the officers of the Department of the Interior are clothed in this matter with a discretion unchecked by any rule of law or equity.

In United States v. McClure (C. C.) 174 Fed. 510, it was held, as outlined by the syllabus:

"The tender to the Land Department by the holder of the record title to land within a forest reservation of a quitclaim deed to such land, to be exchanged for outside land under Act June 4, 1897, c. 2, 30 Stat. 36 (U. S.

Comp. St. 1901, p. 1541), does not vest title thereto in the United States until the deed is accepted and the exchange approved, nor does such tender deprive a court of jurisdiction of a suit by the United States to cancel the patent to such land for fraud; the Land Department having no power to determine such question."

### In the body of the decision, it is said:

"Until the deed is accepted, the owner of the land offered in exchange retains title thereto, either legal or equitable, and the Land Department has no authority to determine the validity of the title offered, if it is defective, or there is some adverse claim thereto. H. H. Goetjen, 32 Land Dec. Dept. Int. 209. All that it can do in such a case is to refuse to accept the deed and make the exchange. Its jurisdiction over the matter, so far as the title is concerned, ends when it ascertains that there is a defect or irregularity therein. Its duty is to then reject the deed, leaving the controverted question of title to be determined in some appropriate proceeding in a tribunal having jurisdiction thereof."

This language must be considered in the light of the question before the court for determination.

The case of Hoyt v. Weyerhaeuser, 161 Fed. 324, 88 C. C. A. 404, though concerning the effect of a railroad lieu land selection on account of lands lost in the place limits, cannot be distinguished in principle from the case now to be determined. The scope of that decision, so far as applicable to this case, is disclosed by the first and sixth syllabi:

"The right to particular tracts of indemnity land under such a grant vests in the company upon the approval by the Secretary of the Interior of the company's selection of them, and neither this right nor the title thereunder relates back so as to divest the rights of prior entrymen or purchasers of the land under the general land laws of the United States. * * *

"The land in question was within indemnity limits under the grants to the Northern Pacific Railroad Company, * * * and the Secretary had withdrawn and suspended it from entry and sale. The company had filed its selection of this land, but the Secretary had not approved it. Thereupon Jones entered and paid for it under the Timber and Stone Acts. Act June 3, 1878, c. 151, 20 Stat. 89 (U. S. Comp. St. 1901, p. 1545), * * * and Act Aug. 4, 1892, c. 375, 27 Stat. 348 (U. S. Comp. St. 1901, p. 1434). * * * Thereafter the Secretary approved the railroad company's selection and issued a patent for the land to that company."

This case is no longer authority on the point here involved, having been reversed by the Supreme Court (Weyerhaeuser v. Hoyt, 219 U. S. 380, 31 Sup. Ct. 300, 55 L. Ed. 258), in which decision it is said:

"It is also beyond dispute that, as the only method provided by the granting act for executing the grant in this respect was a selection of the lieu lands by the railroad company, subject to the approval of the Secretary of the Interior, a construction which would deprive the railroad company of its substantial right to select, and would render nugatory the exertion of power of the Secretary of the Interior to approve lawful selections when made, would destroy the right which it was the purpose of Congress to confer. That the effect of holding that lands lawfully embraced in a list of selections, duly filed and awaiting the approval of the Secretary of the Interior could, in the interim, be appropriated at will by others would be destructive of the right of selection, is not only theoretically apparent from the mere statement of the proposition, but has moreover in actual experience been found to be the practical result of carrying that doctrine into effect. See [application of Case of Sjoli v. Dreschel] 25 Op. Attys. Gen. 632. Considering the language of the

granting act from a narrower point of view, a like conclusion is in reason rendered necessary. The right to select within indemnity limits was conferred to replace lands granted in place, which were lost to the railroad company because removed from the operation of the grant of lands in place by reason of the existence of the rights of others originating before the definite location of the road. The right to select within indemnity limits excluded lands to which rights of others had attached before the selection, and hence simply required that the selection, when made, should not include lands which at that time were subject to the rights of others. The requirement of approval by the Secretary consequently imposed on that official the duty of determining whether the selections were lawful at the time they were made, which is inconsistent with the theory that any one could appropriate the selected land pending action of the Secretary." 219 U. S. pages 387, 388, 31 Sup. Ct. page 303, 55 L. Ed. 258.

"In all such cases the first in time in the commencement of proceedings for the acquisition of the title, when the same are regularly followed up, is deemed to be the first in right. 219 U. S. page 389, 31 Sup. Ct. page 304, 55 L. Ed. 258.

"Under this legislation the company was, by the direction or regulations of the Secretary of the Interior, required to present at the local land office selections of indemnity lands, and these selections, when presented conformably to such direction or regulations, were to be entertained and noted or recognized on the records of the local office. When this was done, the selections became lawful filings: and while, until approved and patented, they would remain subject to examination, and to rejection or cancellation where found for any reason to be unauthorized, they, like all other filings, were entitled to recognition and protection so long as they remained undisturbed upon the records." 219 U. S. pages 391, 392, 31 Sup. Ct. pages 304, 305, 55 L. Ed. 258.

"In fact, a railroad indemnity selection, presented in accordance with departmental regulations and accepted or recognized by the local officers, has been uniformly recognized by the Land Department as having the same segregative effect as a homestead or other entry made under the general land laws. 219 U. S. page 392, 31 Sup. Ct. page 305, 55 L. Ed. 258.

"In none of the cases, moreover, was the well-settled doctrine of this court as to relation, even by remote implication, questioned." 219 U. S. page 393, 31 Sup. Ct. page 305, 55 L. Ed. 258.

That this decision is controlling of the present case is further shown by the dissenting opinion of two of the justices, wherein is pointed out the full scope and effect of the decision. To the same effect is the late case of Rasmus K. Svor v. Catherine M. Morris, 227 U. S. 524, 33 Sup. Ct. 385, 57 L. Ed. ——, decided by the Supreme Court February 24, 1913.

In Campbell v. Weyerhaeuser, 161 Fed. 332, 88 C. C. A. 412, the same court rendering the decision as in Hoyt v. Weyerhaeuser, it was decided, where a person repeatedly filed under the Timber and Stone Acts, his application to enter the land, but the officers of the Land Department rejected his application each time, and refused to permit him to enter the land, subsequently patenting it to another, that the former had not thereby placed himself in privity with the United States in title, before a patent issued to another, and may not maintain a bill in equity to charge the title under the patent with a trust in his favor.

The Supreme Court, in affirming this decision, declined to place the affirmance on the ground upon which it was decided in the Court of Appeals:

"The Court of Appeals held that Campbell acquired no equitable interest in the land by his application, and the denial thereof, and consequently he

could not maintain a bill in equity to charge the title under the patent issued to the railroad company upon a selection of a tract as lieu land, and affirmed the decree of the Circuit Court dismissing the bill. As in any event the decision rendered in the Hoyt Case is decisive of this, we hold that the bill was rightly dismissed, and the decree of the Circuit Court of Appeals is therefore affirmed." 219 U. S. 425, 31 Sup. Ct. 321, 55 L. Ed. 279.

The extracts which have been given from the opinion in Weyerhaeuser v. Hoyt show that the Supreme Court's ruling was based upon two grounds—the broad ground that Congress intended to confer a substantial right upon the railway in giving it this right to make lieu land selection, which would be defeated if it were held that a selection, in all things regular, created no interest in the land. The court reached the same conclusion on the further ground that even a narrow construction of the act showed the same reason and intent, because the means provided to be employed—that is, the requirement of the approval of the Secretary of the Interior to determine whether the selected lands included those in which the rights of others had attached prior to selection—would be useless if no right attached upon selection.

The right to lieu land selections, on account of lands individually owned and included in a forest reserve, is a substantial right. It cannot be but that Congress intended to confer a substantial and valuable advantage upon the landholder in forest reserves. It was to the advantage of the United States to get the settlers out of the reserves, that the danger from fires, and perhaps other sources, might be lessened, and the care for and development of the reservations to the best advantage attained. At the same time, Congress could not but realize, in surrounding the land of the individual with a reservation, thereby isolating the settler and his land, separating it and him from all possible proximity to commercial and social development, markets, schools, churches, and many other things that man, with his social instincts, requires and values, that thereby substantial advantages to the individual landholder had been cut off. By the Lieu Land Act it was intended to, at least in part, restore these advantages of which he had been deprived by the creation of the forest reserve.

It is true that, in the case of the railway, it had lost entirely the base land in the place limits for which it made its selection in the indemnity limits. In the forest reserve, the individual retains the title until the exchange with the government is completed; but all the substantial advantages he had a right to build upon in acquiring it are lost by the including of his land in the government forest. That which is left is but a shadow. True, it enables him to forbid others entering upon his land, but that is about all.

The second ground of the Supreme Court's ruling is also found in this case. The act of June 4, 1897, provides:

The applicant "may select in lieu thereof a tract of vacant land open to settlement not exceeding in area the tract covered by his claim or patent; and no charge shall be made in such cases for making the entry of record or issuing the patent to cover the tract selected." 7 Fed. St. Ann. 318.

Rule 18, promulgated by the Interior Department under this act (24 Land Dec. Dept. Int. 589, at 593), provides:

"18. All applications for change of entry or settlement must be forwarded by the local officers to the Commissioner of the General Land Office for consideration, together with a report as to the status of the tract applied for."

The courts will take judicial notice of department rules. Caha v. U. S., 152 U. S. 211, 221, 14 Sup. Ct. 513, 38 L. Ed. 415; Cosmos Co. v. Gray Eagle Co., 190 U. S. 301, 309, 23 Sup. Ct. 692, 47 L. Ed. 1064.

Of what benefit or effect could be the consideration by the Commissioner of the General Land Office of the status of the land applied for, whether vacant or open to settlement at the time of the selection, or not, if the selection itself vests in the applicant no substantial right or equitable interest? If it does not do so, the mere report of the status of the tract at the time the local officer made his report would be no guide for any purpose. It would be a vain thing.

Whether, after having suspended entries under the Hyde script, without determination of its validity, the action of the Department of the Interior is considered as an intentional disregard of the Hyde & Co. filing, or that it was overlooked and forgotten by the officers of that department, directly charged to be the fact in the bill—that is, whether viewed as a mistake of law or fact—the allegations of the bill are sufficient. Germania Iron Co. v. U. S., 165 U. S. 379, at 385, 17 Sup. Ct. 337, 41 L. Ed. 754.

Defendants contend the bill shows that complainants have been guilty of laches in not compelling the Interior Department to vacate the order suspending entries on the Hyde script, and, further, compelling that department to act upon complainants' selections prior to the issuance of patent to the defendants and their grantors. The question of laches is affected and qualified to such an extent by the surrounding circumstances that it will not be presumed, and the complainants forced to negative it, unless a clear case is presented.

Demurrer overruled.